THE AMSTERDAM REALTY COMPANY *vs.* FRANK H. JOHNSON.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 7th—decided July 5th, 1932.

*Albert M. Herrmann,* with whom, on the brief, was *Samuel R. Aaron,* for the appellant (plaintiff).

*Frederick C. Hesselmeyer,* with whom, on the brief, were *Samuel O. Clark, Jr.,* and *Thomas A. Grimes,* for the appellee (defendant).

HAINES, J. The plaintiff owned and managed an apartment house in the city of New Haven, and leased to the defendant for two years, beginning October 1st, 1929, one of the thirty-eight apartments therein, at $140 per month payable in advance. The defendant entered into possession of the apartment and paid the rent each month as required by the terms of the written lease, the last payment being made March 1st, 1931, for that month, and later that month vacated the premises.

The complaint is in two counts, one for the rent payable on April 1st, and the other for the rental for eighteen months of a maid's room, being $180. The trial court found for the defendant on the second count and no question is now made in relation thereto.

The answer sets up that the apartment was infested with vermin for considerable periods of time, and that there was an interference with the quiet enjoyment of the premises by excessive and unusual noises in other portions of the building, in permitting strangers and others to enter and congregate in the building to the disturbance of the occupants, and, more particularly, a failure by the plaintiff, upon reasonable and repeated requests, to properly and adequately heat the apartment as required by General Statutes, § 2659, the latter causing not only discomfort but sickness in the defendant's family. There was also a counterclaim, but as to this the court found for the plaintiff.

The defendant contended at the trial that the cumulative effect of these acts and omissions of the plaintiff was such as to amount in law, upon the vacating of the apartment, to a constructive eviction of the defendant, and that the plaintiff breached the terms of the lease, and thus justified the defendant in vacating the apartment and his refusal to pay further rent therefor. The trial court sustained the defendant's contention.

The plaintiff first asks certain changes in the finding. The trial court found, in substance, that the heat in the apartment was inadequate, and particularly so in February and March, 1931; that the defendant had complained from time to time, and though the plaintiff made repeated promises to remedy the defect, did not do so; that the defendant accepted the promises for some months, and wishing to be fair to the plaintiff, endeavored unsuccessfully to find another tenant to take the apartment, but on March eleventh notified the plaintiff in writing that he would terminate the lease and vacate the apartment before April first. It was found that the central heating system for the

building and the fuel therefor was adequate, but the valves on the radiators in the defendant's apartment were apt to clog, and were once found to be clogged, with oil and sediment, preventing the steam from entering the radiators, so that for considerable periods during the day and evening the temperature in the apartment ranged between sixty-two and sixty-six degrees only and the defendant's family and his guests were often compelled to wear outer or extra clothing to keep comfortably warm; that it was reasonably possible for the plaintiff to have obviated this condition, but it was not done; that the heat was sufficient for the first year of the defendant's occupancy, but from the onset of the cool weather in the fall of 1930 the conditions above referred to caused the defendant to complain to the plaintiff many times, both verbally and in writing, but without permanent improvement; that the defendant was greatly annoyed by musical instruments and other distracting noises in other portions of the building, which the plaintiff permitted to continue.

These findings go to the heart of the appeal, and we have examined the certified evidence with care and attention to the specific facts found, but are unable to find any of importance which were not directly testified to or reasonably inferable from the testimony. We cannot disturb the factual situation disclosed by the record.

The other assignments of error present two questions for our consideration, viz.: whether there was a constructive eviction of the defendant, and whether the plaintiff violated the covenants in the lease. A third and related question is whether the defendant, by his delay in vacating, waived his claimed right to do so, in any event.

It is common knowledge that there has been a great

increase in recent years, of tenants in large apartment houses with a central heating system, wherein the tenants are supplied by the landlord with heat, light, hot water, refrigeration, and other aids to comfortable living theretofore supplied by the tenant himself. The need of ensuring adequate protection to the comfort and health of tenants under these conditions, may well have been the reason for the enactment of our statute, General Statutes, § 2659, which imposes a penalty upon the landlord where there is a failure to furnish a temperature of sixty-eight degrees. It also states that a temperature of less than sixty-eight degrees shall "be deemed injurious to the health of the occupants" of such rented premises; that is, it in effect declares that such temperature interferes with the comfortable or quiet enjoyment of the leased premises.

The finding shows that the defendant's little daughter was frequently ill with colds during the winter of 1930 and 1931, necessitating medical attendance and the care of a nurse on several occasions, and ultimately an operation upon her ear, and that it was difficult or impossible to keep the child warm. One of the landlord's covenants in the lease was to use due care in furnishing steam for heating the premises. This can only mean that it would use due care to heat them adequately, and the statute fixes a minimum temperature as a test of adequacy. Upon the established facts, it is apparent that it did not use due care and thus violated this covenant, rendering the apartment dangerous to health and therefore untenantable. Not only did the landlord violate the covenant, but the statutory obligation was also violated. "If the lessor is under an obligation to heat the premises for his tenant his failure to do so, if it renders them uninhabitable, will constitute an eviction. Thus where the landlord of an apartment house who had covenanted

to furnish the tenant of an apartment therein proper and sufficient heat, fails to do so but keeps the apartment at such a low temperature that it is unfit for occupancy, his conduct constitutes an eviction." 2 Underhill, Landlord & Tenant, p. 1142; 2 McAdam, Landlord & Tenant, (4th Ed.) p. 1399 *et seq.* "A constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." *Schulte Realty Co.* v. *Pulvino,* 179 N. Y. Sup. 371, 372. "Any disturbance of the tenant's possession by the landlord whereby the premises are rendered unfit or unsuitable for occupancy, in whole or in part, for the purposes for which they were leased, amounts to a constructive eviction, if the tenant so elects and surrenders his possession. 16 R. C. L. 686. The rent is suspended by an eviction because it is plainly unjust that the landlord should be permitted to collect it, while by his own act he deprives the tenant of the possession which is the consideration for it." *Murry* v. *Merchants' Southwest T. & S. Co.,* 98 Okl. 270, 272, 225 Pac. 547, 549; *Key* v. *Swanson,* 113 Okl. 287, 290, 241 Pac. 490, 492; *McCall* v. *New York Life Ins. Co.,* 201 Mass. 223, 87 N. E. 582; *Conroy* v. *Toomay,* 234 Mass. 384, 125 N. E. 568; *Hatch* v. *Stamper,* 42 Conn. 28; *Neuschtat* v. *Rosenthal,* 87 Conn. 400, 87 Atl. 741; *Gans* v. *Olchin & Co., Inc.,* 109 Conn. 164, 145 Atl. 751; *Pakas* v. *Rawle,* 152 N. Y. Sup. 965; *Veysey* v. *Moriyama,* 184 Cal. 802, 195 Pac. 662. The defendant was therefore justified in vacating the apartment and was without obligation thereafter to pay rent, unless, as the plaintiff claims, he waived that right by his continued occupancy after the earlier delicts of the plaintiff had taken place.

This does not assume the character of a vital question, for the reason that the finding shows the insufficiency of heat occurred "especially during the period from February to March when the defendant vacated," as he had notified the plaintiff on the eleventh that he would do. Also, he was entitled to remain a reasonable time after the former failures of the plaintiff, relying on the promises of the latter to remedy the situation. *Marks* v. *Dellaglio,* 56 App. Div. 299, 67 N. Y. Sup. 736; *Krausi* v. *Fife,* 120 App. Div. 490, 105 N. Y. Sup. 384; *Siebold* v. *Heyman,* 120 N. Y. Sup. 105; *Hartenbauer* v. *Brumbaugh,* 220 Ill. App. 326; *Dunton* v. *Sweet,* 210 Mich. 525, 177 N. W. 962; 36 Corpus Juris, p. 264.

We find no harmful error in the rulings on evidence which are included in the assignments of error.

There is no error.

In this opinion the other judges concurred.