## LEATHER PRODUCTS CO., INC.
### vs.
## THE THOMAS P. TAYLOR CO.

Court of Common Pleas    Fairfield County    File #36204

Present:  Hon. SAMUEL MELLITZ, Judge.

Zalmon S. Hirsch,
Arthur Weiss,                    Attorneys for the Plaintiff.

Pullman & Comley,
Sidney Johnson,                  Attorneys for the Defendant.

### MEMORANDUM FILED APRIL 3, 1936.

MELLITZ, J.  The plaintiff seeks damages for the non-performance by the defendant of a covenant to furnish heat in the factory leased by the plaintiff from the defendant.

Upon the established facts it is clear that the heat supplied to the plaintiff's premises during the entire period of the plaintiff's occupancy of the premises, when heat was required, was inadequate and so interfered with the plaintiff's possession as to justify the ultimate abandonment of the premises by the plaintiff.  The failure of the defendant and its assignee to supply adequate heat constituted a violation of the covenant in the lease and a constructive eviction of the plaintiff.  **Amsterdam Realty Co. vs. Johnson, 115 Conn. 243.**

Nor does the evidence justify a finding that the plaintiff could have avoided or prevented damage by the use of fa-

cilities which were or reasonably could have been within the plaintiff's control. The physical situation was such that the premises could not have been heated except by the heating plant which was in the control of the defendant and its assignee and under these circumstances it could not reasonably be expected that the plaintiff would or could do anything to supply the necessary heat to make the premises tenantable.

**Volga Realty Corp. vs. Chauncey Holt Co., 172 N. Y. Supp. 206.**

The provision in the lease to the effect that the premises are accepted by the Lessee "as is" has no relation to the defendant's covenant to furnish heat and cannot be held to qualify the latter covenant. Acceptance of the premises "as is" meant simply that so far as the physical condition of the premises was concerned, the Lessor was making no warranties and was undertaking no obligation to make alterations or repairs which might then have been necessary, but as to these matters the Lessee was accepting the premises in the condition they were then in. That this is the only reasonable construction is evident from the fact that in the very same sentence there is an exception to the effect that the Lessor agreed to clean the premises thoroughly and to paint the sidewalks and ceilings wherever reasonably necessary before possession is delivered to the Lessee.

The Lessor's covenant to furnish heat at its own cost and expense is expressed in clear and simple language and is an unequivocal undertaking by the Lessor to furnish such heat as would be necessary to adequately heat the premises. If it was the intent that the obligation of the Lessor should be qualified by the capacity of the existing heating plant to generate heat, such a condition could have been very simply stated and easily incorporated. To give to the Lessor's unequivocal undertaking the construction urged by the defendant would do violence to the plain meaning and intent of this provision of the lease.

At the time of the execution of the lease, the premises were subject to a mortgage held by the Bridgeport-Peoples Savings Bank. Thereafter the defendant quit-claimed the title to the Bank and executed a written assignment of the lease to the Bank, containing a recital that it was subject to

the covenants, conditions and provisions contained in the lease.

There is no evidence to support the defendant's claim that the plaintiff entered into a new arrangement or tenancy with the Bank, and the only question in this connection is as to whether such a new arrangement or tenancy arose by opera- tion of law as a result of the defendant's conveyance to the Bank.

After the Bank acquired the title, the plaintiff paid rent to the Bank and generally acted with the Bank as its new landlord. This, however, did not relieve the defendant from liability on its covenants in the lease. The transfer of the reversion by the defendant did not sever the privity of con- tract between the defendant and the plaintiff so as to enable the defendant to avoid liability on its express covenants.

"Most of the cases which have arisen on the point of liability after assignment, are cases of covenants by lessees, but the reasoning is equally good for covenants by lessors. A lessor who has expressly covenanted with his lessee for the performance of certain things cannot escape his liability on such covenants by assigning the reversion to another. 'However it may be as to the benefits, the lessors cannot get rid of the burden of their contracts by conveying their land. In the case of the tenant as in the case of the landlord, it cannot be endured that he should afterwards be deprived of his action on the cove- nant to which he trusted by an act to which he cannot object'." **Jones, Landlord & Tenant, Sec. 454, p. 518.**

**Jones vs. Parker, 163 Mass. 564, 568; Carpenter vs. Pocasset Mfg. Co., 180 Mass., 130.**

After the transfer of the reversion to the Bank, subject to the plaintiff's lease, the plaintiff had a right to look to the Bank for the performance of the Lessor's covenants in the lease, certainly during the period while the Bank continued in the role of landlord and as to covenants running with the land. **Underhill, Landlord and Tenant, Vol. 1 §320, p. 496.**

The lease remained in force after as well as before the transfer of the reversion to the Bank. The Bank held a mortgage on the property prior to the execution of the lease to the plaintiff. The Bank could have, if it chose to do so,

asserted its paramount title and foreclosed its mortgage or it could have attempted to obtain possession before foreclosure, and in either event, if the plaintiff attorned to the Bank and thereby recognized that it was holding under one who entered by virtue of a paramount title, a different situation might have been presented. But here the Bank took possession and entered into its relationship with the plaintiff, not as a prior mortgagee asserting a paramount title but as a transferee of the reversion. The usual questions arising from an attornment by a lessee to one holding a paramount title do not arise.

Attornment is used to describe the acknowledgment by one previously in possession of land, that he is tenant to another, **when there has been no transfer of any reversion to the latter.**

**Tiffany, Landlord and Tenant, Vol. 1 §19, p. 172.**

By taking a conveyance of the title from the defendant and entering as a result thereof, the Bank stands in no different position than any other transferee of the reversion. The lease from the defendant to the plaintiff in the absence of a new agreement between the plaintiff and the Bank remained in force and the defendant's conveyance to the Bank simply operated as a change of landlord. The basis of the tenancy, viz., the lease, and the terms of the tenancy remained the same.

Under these circumstances, the Bank as transferee of the reversion was in approximately the same position as the defendant so far as the covenants of the lease are concerned and so far as they were of a character as to run with the land.

**Tiffany, Landlord & Tenant, Vol. 1 §149, p. 881.**

The defendant concedes that the covenant to furnish heat was such as to run with the land.

**Storandt vs. Vogel & Binder Co., 125 N.Y.S. 568, 16 RCL 642.**

The plaintiff then could pursue either the defendant or the Bank, or both at the same time, though it is entitled to but a single satisfaction.

**Jones, Landlord & Tenant, Sec. 447, p. 511.**

The defendant however claims that after the transfer of the title to the Bank, the Bank became the principal and the

defendant the surety for the performance of the covenants in the lease, and a release of the principal operated to release the defendant as surety.

The conveyance by the defendant to the Bank could not have the effect claimed by the defendant. While the relation between the defendant and the Bank may be in the nature of suretyship, the defendant's obligation to the plaintiff continued on the defendant's covenant as the one primarily liable to the plaintiff.

Carrano vs. Shoor, 118 Conn. 86, 95. Boynton vs. Morgan, LR 22, QBD 74.

A release by the plaintiff of the Bank would therefore not have the effect of releasing the defendant unless the plaintiff's damages were fully satisfied by the Bank or the plaintiff and the Bank understood that the release of the Bank was intended to include all claims of the plaintiff against both the Bank and the defendant.

Preceding the plaintiff's vacating the leased premises and the plaintiff's removal of its plant to a new location, discussions were carried on between the attorneys representing the plaintiff and the Bank. These discussions culminated in the plaintiff's taking a lease of other premises and in the surrender of the keys by plaintiff's attorney to the Bank's attorney and in a letter from the Bank's attorney to plaintiff's attorney in which was contained an acknowledgment of the keys and a statement that in surrendering the premises the plaintiff released the Bank from any claims in relation to the lease and likewise the Bank released the plaintiff from any claim for rental due thereunder. The plaintiff's attorney did not reply to this letter, nor was there any writing executed by either the plaintiff or its attorney, nor were there any further oral discussions between the parties. At no time during any of the discussions between the attorneys was any mention made of the defendant's liability to the plaintiff or of any claims which the plaintiff might have against the defendant. If, under these circumstances, it can be held that the plaintiff released any claim it had against the Bank, there is no justification in holding that there was any understanding or intent that the plaintiff was also releasing the defendant unless the plaintiff in its settlement with the Bank was receiving **full satisfaction** of its claim.

In discussing the effect of a written release, our Supreme Court, in **Dwy vs. Connecticut Company, 89 Conn. 74, at page 80,** said:

"Different degrees of significance may attach to several kinds of writing as evidence of the satisfaction received, **but behind them all alike lies the ultimate decisive fact sought after, of the acceptance or nonacceptance of consideration in full satisfaction . . . .**In our conception of the law no peculiar virtue attaches to a formal release, **except as an indication of satisfaction received . . . .**satisfaction once had exhausts the right of action, and it (the rule) should be interpreted and applied according to its spirit and purpose rather than its letter."

And in the same opinion, page 91, quoting from **Parsons on Contracts,** relating to the analogous common-law liability of joint debtors, the rule is stated to be that "if the parties, the instrument being considered as a whole and in connection with all the circumstances of the case and the relation of the parties, cannot reasonably be supposed to have intended a release, it will be construed as only an agreement not to charge the person or party to whom the release is given, and will not be permitted to have the effect of a technical release".

No written release was given to the Bank. If it is proper in the case of a written release to examine into the circumstances to find the intent of the parties, there is every justification for doing so where there is no written release and where one of the parties wishes to have a release spelled out of the conduct of the parties.

At most, therefore, the evidence indicates that any settlement made between the plaintiff and the Bank was not intended to affect the plaintiff's claim against the defendant, and the plaintiff received only partial satisfaction from the Bank when the latter waived payment of the rent which accrued after January 1, 1935.

The plaintiff is entitled to a single satisfaction. Anything received by the plaintiff from any of the parties who were liable to the plaintiff must be credited by the plaintiff as partial satisfaction of its entire claim pro tanto.

**Sutherland on Damages, 4th Ed. Sec. 158, note 51; Cases**

cited in note 58 LRA 293, at 301; Dwy vs. Connecticut Co., 89 Conn. 74, 95; Also Burkhardt vs. Armour & Co., 115 Conn., 249, 257.

Accordingly the rent which accrued before the plaintiff's eviction and for which payment was not made by the plaintiff, must be credited as partial compensation received by the plaintiff on its claim. The eviction was effective from the time when the plaintiff abandoned possession of the premises, which is considered to be from the time when it began, and continued with reasonable diligence the removal of its manufacturing plant from the premises.

**Gans vs. Olchin & Co., Inc., 109 Conn., 164, 167.**

The plaintiff began the removal of its plant on February 1, 1935 and continued the removal with reasonable diligence until it surrendered the keys to the premises.

The plaintiff is entitled to recover the difference between the market value of the premises for the unexpired term of the lease and the reserved rent, and in addition any other loss directly caused by the eviction. No evidence was offered by the plaintiff of the difference between the market value of the premises for the unexpired term and the reserved rent, and the only claim for special damages in the complaint alleges that as a result of the failure of the defendant to supply heat in accordance with the terms of the lease, the plaintiff "vacated the premises, and, at great expense, moved its plant to a different location".

At the trial the plaintiff introduced evidence of certain overhead expenses, such as salaries paid to two officers and five employees for one week while the moving operations were taking place, and during which period the plaintiff claims that these employees were idle because of the necessary interruption in the operation of the plantiff's plant. These expenses are claimed by the plaintiff as part of the damages sustained by it in moving its plant.

The cost of moving the plaintiff's plant was a proper element of damages and the plaintiff incorporated in the complaint a claim for such damage.

Salaries of employees rendered idle during the period of moving were also a proper element of damage.

Byers vs. Moore, 110 Ark., 504; Volga Realty Corp. vs Chauncey Holt Co., Inc., 172 N.Y.S. 206.

However, in order to be entitled to recover for the loss sustained by reason of salaries paid to idle employees, the plaintiff should have incorporated such a claim in the complaint.

"The plaintiff in his complaint must give the defendant fair notice of what he claims, and in an action for consequential damages must state the consequences which he claims to have resulted from the wrongful act charged."

Farrington vs. Cheponis, 82 Conn. 258, 261.

"The test whether the particular damage claimed should have been specifically alleged, is not whether it necessarily followed from the facts proved, but whether it necessarily followed from the facts as they are alleged in the complaint."

Eldridge vs. Gorman, 77 Conn. 699, 705.

Does it necessarily follow from the plaintiff's allegation of expense sustained in moving its plant that the plantiff also sustained damage by reason of the salaries of idle employees? It does not seem so. Employees might during the interval of moving have been otherwise profitably employed, or the plaintiff might for many reasons not have incurred such an element of expense as a part of the removal of its plant. The defendant could not reasonably have had fair notice from the allegation of the complaint, that the plaintiff also claimed the salaries of idle employees as part of its moving expenses, and these items are therefore disallowed.

The plaintiff is entitled to recover the advance payment of $225 made to the defendant for the rent for the month of May, 1935. The defendant's answer, in its 7th defense, admits the receipt of the sum of $225 as a deposit as claimed by the plaintiff and the defendant's failure to repay the same. This admission rendered it unnecessary for the plaintiff to introduce evidence on the subject. The plaintiff was justified in vacating the premises and was without obligation thereafter to pay rent. Amsterdam Realty Co. vs. Johnson, supra, p. 248. And since, by reason of the Lessor's default, there was no rent to be due from the plaintiff for the month of May, 1935, the defendant is not entitled to retain the advance payment made by the plaintiff, whether it be regarded as a pay-

ment of rent or a mere deposit. Graham vs. Wood, 48 Pacific (2nd) 124,—Cal. APP.

Judgment for the plaintiff to recover of the defendant $529.99 damages and costs.