[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action plaintiff seeks to recover unpaid rent and other damages arising out of an alleged breach of lease by the defendant. The defendant John Flanagan is the President of Hartford Typesetting, Inc., and is sued in his individual capacity as guarantor of the lease.
In August, 1988, after extensive negotiations, the parties entered into a five year lease, commencing October 1, 1988, for commercial property in which defendant would conduct his printing business. The terms of the lease required defendant to pay a monthly base rent plus common area maintenance charges, CT Page 9462 taxes and miscellaneous other expenses. The lease also provided that defendant would be given a credit of $6,349 to make certain improvements to prepare the premises for his business. Chief among these improvements insofar as this matter is concerned, was the installation of a dark room and plumbing to bring hot water into the work area. Defendant required approximately twenty gallons of hot water per day to heat the typesetting machine that produced the printed materials ordered by defendant's customers. The plumbing, although installed by defendant's contractors, was connected to the plaintiff's central hot water system that serviced the entire building. Paragraph six of the lease specifies that the landlord shall provide at its expense heat, air conditioning, electricity and water. Paragraph seven provides, however, that the landlord shall not be liable for any interruption of utility services provided that it exercises reasonable diligence to restore the interrupted services.
On October 1, 1988 defendant took possession of the premises, after expending approximately ten thousand dollars of his own money, in addition to the lease credit, to properly prepare the premises for occupancy. Beginning in the early spring of 1989, plaintiff's hot water system failed to deliver sufficient hot water to defendant's premises, thus interfering with defendant's ability to meet his production requirements. While the problem was at first intermittent it became severe enough in June, 1989, that defendant wrote to plaintiff, advising it of the problem and requesting that it be corrected. Despite this and other requests to the building superintendent the problem continued for the next year, culminating in a series of regular complaints in April and May, 1990. Despite these complaints and the building manager's good faith efforts to correct the problem, plaintiff's system failed to provide sufficient hot water for defendant's modest needs. Despite repeated instructions from the management company that the entire system needed replacement, plaintiff failed to undertake such replacement until the late summer or early fall of 1990. There was no evidence presented that defendant made any complaints about the hot water after August or September, 1990. As a result of the repeated interruptions in production due to the lack of hot water defendant lost a substantial, albeit undocumented, amount of business and incurred other losses due to the necessity to subcontract the work that he could not perform.
CT Page 9463 Defendant ceased paying rent in June, 1990 and vacated the premises in February, 1991. Plaintiff now seeks to recover unpaid rent as well as various other charges due under the lease. Defendant asserts that he was constructively evicted from the premises and is therefore excused from paying rent for the period after he vacated in March, 1991. By way of set off defendant also alleges that he is entitled to reimbursement for damages that flow from the landlord's failure to provide adequate hot water. This claim pertains to the period when defendant actually occupied the premises, namely October, 1988 through February, 1991. The parties stipulated that plaintiff took reasonable efforts to mitigate its damages.
"A constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." Amsterdam Realty Co. v. Johnson, 115 Conn. 243, 248 (1932). See, also, Conference Center Ltd. v. TRC, 189 Conn. 212 (1983). Defendant correctly acknowledges that the defense of constructive eviction applies only if the tenant has vacated the premises. Because defendant vacated in February, 1991, the relevant inquiry is whether, as of that moment, the premises were "untenantable." If so, then defendant is relieved of his obligation to pay rent from February, 1991, through the balance of the lease, September, 1993.
The evidence indicates that serious and persistent problems with respect to the hot water existed from the spring of 1990 through August or September of 1991. No evidence was introduced indicating either that defendant complained about the hot water system after September, 1991, or that, in fact, the system was malfunctioning after that time. This is consistent with the evidence indicating that a new system was installed at about this time. The record does not support the claim that as of February, 1991, the premises were untenantable. Defendant therefore has not sustained his special defense. Defendant is liable for the unpaid rent and other lease charges from February, 1991, when he vacated, through the remainder of the lease term.
By way of counter-claim (the court ruled this would be treated as a set off) defendant claims damages arising out of plaintiff's failure to provide adequate hot water. CT Page 9464 Specifically, defendant asserts that during the period when he occupied the premises, he was forced to subcontract certain work and incur other expenses as a result of lack of hot water. Resolution of this issue requires consideration of paragraphs six and seven of the lease. As previously noted, paragraph six obliges plaintiff to provide utilities, including water, to defendant. Paragraph seven, however, provides that, "[i]n the event of any such interruption, curtailment, stoppage or suspension, there shall be no diminution or abatement of rent, additional rent or other charges due from tenant to landlord, hereunder, Tenant's obligations hereunder shall not be reduced or affected, and Landlord shall have no responsibility or liability for any such interruption . . . . However, Landlord shall exercise reasonable diligence to restore any services or utilities so interrupted curtailed stopped or suspended." (Emphasis supplied).
Plaintiff relies on paragraph seven to support its argument that it is not liable for any damages to defendant as a result of its failure to provide adequate hot water. Its reading of this paragraph, however, ignores the requirement that plaintiff use due diligence to restore any interruptions in utility service. If plaintiff does exercise due diligence then it is not responsible for any damages to defendant; if it did not exercise due diligence then it cannot escape responsibility for defendant's losses. In the spring, 1990, there were ongoing problems with the hot water system. Plaintiff's management company testified that defendant repeatedly complained about the problem and that it attempted to correct it, but only had limited success because the system itself needed to be replaced. The management agent also testified that plaintiff's president was made aware of the problem on a number of occasions but declined to replace the system because of the expense involved. Under these circumstances, the plaintiff did not exercise reasonable diligence to correct the problem, and therefore is not relieved of liability for the losses incurred by the defendant. The following damages to defendant will be set off against plaintiff's damages:
a. Subcontracting to complete work $9,000
b. Down Time $2,000
c. Lost or wasted material $ 900
CT Page 9465 d. Legal Fees $ 200 ------- TOTAL $12,100
Plaintiff has submitted proof that it has suffered damages in the following amount:
a. Rent $37,512.00
b. Operating Expenses 1990 1,024.88
c. Operating Expenses 1991 2,146.18
d. Real Estate Taxes 1990 1,177.27
 e. Real Estate Taxes 1991 1,177.27 ---------- TOTAL DAMAGES $43,037.60
ATTORNEY'S FEES 3,600.00
Judgment for plaintiff in the amount of $46,637.60. Defendant is granted a set off in the amount of $12,100. Net judgment to plaintiff is $34,537.60, plus costs of $100.60.
SO ORDERED.
Holzberg, J.