[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a summary process action wherein the plaintiff seeks to evict a commercial tenant on various grounds. The defendants are Vin's Key Club, Inc. ("Key Club") and Vincent P. Larobina ("Larobina"). The matter is convoluted because there are issues involving two written leases, prior attempts by the plaintiff to evict the defendants, breaches of covenants alleged by each party against the other, allegations of inhabitability, reinstatement of a lease and failure to give curative notice. The defendants file special defenses and counterclaims.
The court finds the following facts. The plaintiffs, who are Ernest Breiner, Miriam Breiner, Annie Breiner and Annie Breiner as Executrix of the Estate of Michael Breiner, own a commercial building located at 1620 Post Road East in Westport, Connecticut. The plaintiff, Ernest Breiner, apparently on behalf of himself and the co-plaintiffs, entered into a lease with the defendant Key Club, dated April 26, 1991 ("Lease"), granting space on the second floor of the building for use as a health club. Although drawn in the name of all plaintiffs, the lease was signed only by Ernest Breiner on behalf of the landlords, and by Key Club acting by its CT Page 3583 president, Larobina. Larobina also personally guaranteed the performance of the lease obligations of Key Club.
Immediately following the execution of the Lease, a dispute arose as to the size of the water line needed to serve the tenant's needs. A three-quarter inch pipe was available to serve the tenant, but the defendant insisted that a one and one-quarter inch pipe was necessary. The Lease does not specify any size pipe.
To bring in a one and one-quarter inch pipe would require the plaintiff to obtain permission from the owner of a private road, and at greater expense to the landlord. At the same time, questions arose regarding the defendants' compliance with the Town of Westport's Building Regulations and obtaining of a building permit for the renovations. The then counsel for the plaintiffs repudiated the Lease, and the defendant was offered a second lease with different terms including increased rent. The landlord was prepared at that time to install the one and one-quarter inch water line. The defendant rejected the second lease and it was never signed by any party.
The defendant Key Club tendered rent under the Lease through September 1991, at which time such payments ceased, whereupon the plaintiffs commenced a summary process action in the Housing Session of the Superior Court. This matter was withdrawn on behalf of the plaintiffs without judgment because the plaintiff Ernest Breiner suffered a heart attack. A second summary process action was also withdrawn when former counsel of the plaintiff was required to withdraw because of personal problems.
At various times prior to the institution of the instant action, the plaintiff or his former counsel claimed that the Lease between the parties was invalid, that there was an oral lease, and that there was no lease. At the trial of this case, however, the parties agreed that the Lease was valid and binding on them.
This action is based on nonpayment of the rent for the month of July 1994, maintenance of a serious nuisance, violation of express stipulations in the Lease, and as against Larobina only, occupation by one who never had a right or privilege to do so. The defendants raised special defenses claiming that the notice to quit was defective, that the landlord breached covenants in the lease by not providing utilities necessary for Key Club to operate its business, that the plaintiff failed to give the defendant a Notice to Cure required by the terms of the Lease, that the premises are CT Page 3584 uninhabitable, the right to set-off lost profits against lease payments, and a constructive eviction.
In its counterclaim, Key Club prays for specific performance of the Lease and exclusive possession of the premises. The special defenses and counterclaims of the defendant Larobina are substantially the same as those of the defendant Key Club.
The first issue for the court to determine is which lease, or what type of tenancy, exists between the parties. Although plaintiff's former counsel attempted to repudiate the Lease, and brought summary process actions alleging other types of tenancies, it is clear to the court that the Lease (dated April 26, 1991) is the controlling document. There is insufficient evidence that the Lease was ever validly repudiated and most importantly, the parties at the trial agreed that the Lease was the operative document.
In a summary process actions based upon nonpayment of rent, the landlord is entitled to possession of the premises if it is proven that the tenant failed to pay rent for the stated period, and if there are no valid defenses. In this case, it is to be noted that the defendant paid no rent since September 1991, but has occupied the premises to one degree or another since that time, a period of almost four years at the time of trial. For reasons explained at trial but quite irrelevant, the plaintiff's two prior actions were aborted, and they bring this action for nonpayment of the July 1994 rent under the Lease. Defendants do not dispute that the said rent was not paid, but defends on other grounds.
The defendant first claims that the Notice To Quit served by the plaintiff was invalid. The issues raised by this claim were argued and addressed by the court in a pretrial motion to dismiss filed by the defendants. For reasons fully stated on the record, the court denied the motion to dismiss, which denial represents the law of the case, and it is therefore not necessary for the court to address this claim in this Memorandum.
Defendants' next claim that two "reinstatement letters" purporting to reinstate the Lease was defective and that each letter attempted to reinstate a lease different from that alleged in the complaint. It is difficult to understand the rationale of this defense since the defendants have always taken the position that the Lease was valid. Thus, there was never any lease to "reinstate", and furthermore, both parties tried this case assuming the validity of the Lease. This defense has no merit. CT Page 3585
Defendants' next defense alleges that the plaintiff failed to complete improvements in the premises and to provide necessary utilities for the defendant to operate its business. The main issue here is the size of the water line which plaintiff was obligated to install. Although the Lease specified no size, the defendant insisted on a one and one-quarter inch line. For whatever reason a one and one-quarter inch line was not installed and although not specifically alleged, defendants presumably claim a breach of a covenant of the Lease by the plaintiff. Associated with this claim is the defense that the premises were uninhabitable, all of which constituted a constructive eviction.
In an action of summary process based upon non-payment of rent, a claim that the landlord has breached a covenant of the lease, does not in and of itself excuse the tenant from payment of rent. To successfully claim a constructive eviction, defendant must vacate the premises. He cannot fail to pay rent, and simultaneously receive the benefit of remaining in the premises while claiming uninhabitability and constructive eviction.Amsterdam Realty Co. v. Johnson, 115 Conn. 243, 161 A. 339 (1932);Hayes v. Capitol Buick Co., 119 Conn. 372, 170, 176 A. 885 (1935);S.H.V.C., Inc. v. Roy, 37 Conn. Sup. 579, 428 A.2d 806 (1981). In this case, the defendant occupied the premises through the time of trial, not having paid rent for almost four years. He therefore cannot claim inhabitability, constructive eviction, and breach of covenant by the landlord. Defendants' remedy, if any, was to remove itself from the premises, and bring an action for damages against the landlord for his breach of the Lease.
Defendant also claims that the plaintiff landlord failed to give a curative notice in connection with the defendants' default in accordance with Paragraph 9 of the Lease.[1] In the letter of plaintiff's counsel dated June 21, 1994, the defendant was advised that rent for June and July was and would be due on the first of each month, and payable within 10 days thereafter. The court finds that this language was sufficient to give the defendant adequate notice that there was and would be a default in the payment of rent for the months of June and July 1994. This is especially so since the defendant well knew that it had not paid rent in nearly four years, and since the plaintiff had brought two prior actions to evict him. Defendant can hardly complain that it didn't know that non-payment of rent for June and July would constitute a default, or that he was not suitably warned that the plaintiff would attempt to evict him. Nor can the defendant claim that the notice made CT Page 3586 reference to another unsigned lease, since the defendant has always maintained and known that the only operative lease between the parties was the Lease.
The defendant further claims a set-off against rent for loss profits suffered as a consequence of the plaintiff's failure to make improvements and install utilities. The short answer to this claim is that the defendant presented no credible evidence of the existence or the amount of such lost profits, and that claim need not be further addressed.
The defendant next claims that the case is governed by the equitable doctrine against forfeiture. "A court may enjoin a forfeiture of a lease based on technical grounds to relieve a party against forfeitures and penalties not occasioned by his willful neglect, upon the principle that one having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression. Mackey v. Dobrucki, 116 Conn. 666, 670, 166 A. 393. Equity will intervene where the delay has been slight, the loss to the lessors small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the conditions of the lease. F. B. Fountain Co. v.Stein, 97 Conn. 619, 626-27, 118 A. 47." Nicoli v. FrougeCorporation, 171 Conn. 245, 247, 368 A.2d 74 (1976) (internal quotation marks omitted).
The defendants' neglect to pay rent has been willful, and hardly created a "slight delay" but rather one of four years. Because the defendant remained in possession without paying or tendering any rent since September 1991, it is not "unconscionable" to enforce the conditions of the Lease against it. The defendant failed to exercise its option to remove itself from the premises and to seek proper recourse against the plaintiff for damages. Given the nature of the defendants' neglect to pay rent, the defendants loss is not "wholly disproportionate to the injury to the other party." Fellows v. Martin, 217 Conn. 57, 66,584 A.2d 458 (1991).
Defendants' final defense is that the plaintiffs' claimed relief is "only in the name of Ernest Breiner", and therefore the other plaintiffs are not entitled to relief. There is sufficient evidence at trial to show that all plaintiffs are entitled to relief under the plaintiffs amended complaint. There is no merit to this claim of the defendant. CT Page 3587
By way of counterclaim, defendants seek specific performance of the Lease and exclusive possession of the premises, and relate a narrative of the factual history of the conduct between the parties, none of which sets forth an actionable claim, legal or equitable, against the plaintiff. All of the issues raised have either been addressed by the court or are without merit. In denying this relief, the court further notes that the Lease expires by its own terms on May 31, 1996 only weeks from the date of this decision and the equitable relief of specific performance is of no practicable benefit to the defendants. Counsel for Key Club in its post trial brief, requests the court not only to specifically enforce the Lease, but to grant "exclusive possession for a meaningful term of five (5) years under the lease from the date specific performance is granted. . . ." However, "[i]t is not within the power of the court to make new and different agreements." JayRealty, Inc. v. Ahearn Development Corporation, 189 Conn. 52, 55,453 A.2d 771 (1983); Collins v. Sears, Roebuck Co., 164 Conn. 369,375, 321 A.2d 444 (1973). The court has no authority to rewrite the parties' contract. See Bank of Boston Connecticut v.Schlesinger, 220 Conn. 152, 595 A.2d 872 (1991).
Because the court disposes of this case upon the grounds of non-payment of rent, it is unnecessary to discuss the other grounds set forth by the plaintiff.
With respect to the defendant Larobina, there was no credible evidence that he had any interest in the premises or had any right to occupy the same.
A judgment of possession is rendered for the plaintiff on the complaint, and for the plaintiff on the defendants' counterclaims, and taxable costs.
D'ANDRE J.