CAROL C. JOHNSON *v.* HAROLD J. FULLER ET AL.
(10790)

PETERS, HEALEY, PARSKEY, SHEA and DALY, Js.

Argued March 30—decision released July 5, 1983

*John R. Logan,* with whom, on the brief, was *Dwight O. Schweitzer,* for the appellants (defendants).

*Irving H. Perlmutter,* for the appellee (plaintiff).

DALY, J. This is an action to recover unpaid rent and use and occupancy payments claimed to be due under a written lease as well as for damages to premises owned by the plaintiff.

The trial court found the following facts: On October 10, 1978, the parties entered into a written lease whereby the defendants leased the plaintiff's residential premises at 201 Linden Avenue, Branford for an eight month term from October 15, 1978, to June 15, 1979, at a monthly rental of $450, for a total of $3600. The defendants paid a security deposit of $900 and the monthly rental covering the period from October 15 to December 15, 1978. They paid no rent thereafter for the period under the lease to June 15, 1979, which would have amounted to $2700.

The lease further provided that in the event the defendants failed to vacate the premises on June 15, 1979, the use and occupancy payments for the holding over period would be at the rate of $1800 per month. Undoubtedly, this escalation was due to the location of the premises in the Indian Neck section of Branford abutting the beach. Because this is a very desirable area of private residences, normal charges for summer rentals are substantial.

The premises were in good condition at the inception of the lease and the defendants wrote a letter to the plaintiff in November, 1978, indicating their pleasure with the premises. On May 21, 1979, the East Shore District Health Department ordered the defendants to vacate the premises due to a defect in the septic system, to wit, a broken sewer pipe. The defendants refused and initiated an action against the department to restrain it from enforcing its order to vacate. The defendants contended that the dwelling was not unfit for human habitation and that the premises were not a danger to life or health. Consequently, they remained

on the premises and used them to bathe. In addition, they carried on an automobile engine development research operation in the garage in violation of the lease. The premises, during the defendants' occupancy, came to be in a deplorable state with a mobile home, automobiles, parts and litter abounding.

The plaintiff ordered the defendants to leave on June 19, 1979, but they were obdurate. On June 25, 1979, in a separate action, the court, *Hadden, J.,* found sewage defects and ordered the premises posted as being unfit for human occupancy. The defendants were enjoined from occupying the premises but were granted the right of ingress and egress which they exercised to carry on their commercial enterprise.

The plaintiff resorted to a summary process action and had the defendants evicted by a deputy sheriff on September 8, 1979. The plaintiff thereafter instituted this action. The defendants interposed a special defense alleging that the premises were uninhabitable and, therefore, that the plaintiff was not entitled to collect rent. They also filed a counterclaim seeking damages for injuries which they allegedly sustained as a result of the plaintiff's failure to make certain repairs to the premises.

The trial court found that, for the purposes for which the defendants were using them, the premises were habitable and it therefore concluded that the plaintiff sustained his burden of proof with respect to his claim for rent and use and occupancy payments. It denied the plaintiff's claim for property damage. It further concluded that the defendants had not sustained their burden relative to the special defense and counterclaim. Accordingly, it awarded the plaintiff $6850 for unpaid rent and for use and occupancy. From this judgment, the defendants appealed to this court.

The defendants have raised five claims of error, all of which relate to the trial court's finding that the premises were habitable. They claim first that the finding was erroneous because the unrefuted testimony of a health department official established a defective sewage system which existed prior to the time they entered into possession of the premises.

The short answer to this claim is that a trier is not required to believe testimony merely because it is not directly contradicted; *State* v. *Dudla,* 190 Conn. 1, 7, 458 A.2d 682 (1983); *Stanton* v. *Grigley,* 177 Conn. 558, 563, 418 A.2d 923 (1979); *Taylor* v. *Corkey,* 142 Conn. 150, 154, 111 A.2d 925 (1955); nor is the trier bound by the opinions of experts. Holden & Daly, Connecticut Evidence § 118 (c). There was evidence before the court that the defect in the sewage system came about in May, 1979, and the trial court so found. " 'The evaluation of testimony is the sole province of the trier of fact. We do not retry the case. The conclusion of the trial court must stand unless there was an error of law or a legal or logical inconsistency with the facts found.' " *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 70, 459 A.2d 999 (1983).

The defendants next claim that the court erred in awarding damages of $1800 per month for use and occupancy during a three month period when the premises were placarded "unfit for human habitation" pursuant to orders of the health department and Judge Hadden. We do not agree, and we hold that under the circumstances of this case, the award was proper.

In *Thomas* v. *Roper,* 162 Conn. 343, 347, 294 A.2d 321 (1972), we held that "[w]hether the premises are untenantable is a question of fact for the trier, to be decided in each case after a careful consideration of 'the situation of the parties to the lease, the character

of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed.' . . . That factual determination will not be disturbed by this court unless the conclusion is such that it could not reasonably be reached by the trier." (Citations omitted.)

The trial court found that the lease provided that in the event the tenants did not vacate the premises on June 15, 1979, the use and occupancy payments during such period of holding over would be $1800 per month. It further found that despite the posting of the premises, the defendants had the right of ingress and egress and continued to use them to bathe and to conduct an engine development research operation. Moreover, when ordered by the health department to vacate the premises, they refused and instituted an action in Superior Court to enjoin the health department from enforcing its order, alleging that the premises were not unfit for human habitation. Finally, when the plaintiff ordered them off the property on June 19, 1979, in accordance with the terms of the lease, they again refused.

Given these factors, we hold that the fact the premises were posted as unfit is not fatal to the plaintiff's claim for damages for use and occupancy. To hold otherwise would do a severe injustice to the plaintiff and would reward the defendants both for ignoring the orders of the health department and the court and for improperly holding over the term of the lease.

The next claim raised by the defendants is that they were within their statutory rights in withholding rental payments. The gravamen of this claim is that General Statutes § 47a-7 (a) (2) requires a landlord to keep the

premises in a fit and habitable condition, and that the failure to do so precludes him from collecting rent during such period. General Statutes § 47a-4a.

This argument fails for the reasons that: (1) prior to June 25, 1979, the date Judge Hadden ordered the premises to be posted as uninhabitable, the defendants' injunction action constituted a judicial admission that the premises were, in fact, tenantable; and (2) for the period after June 25, the premises were used for commercial rather than residential purposes; thus §§ 47a-4a and 47a-7 are inapplicable. *Hoban* v. *Masters,* 36 Conn. Sup. 611, 613, 421 A.2d 1318 (1980).

The defendants further claim that the plaintiff breached the implied warranty of habitability running with the premises. We disagree.

"In general, there is no implied warranty of habitability given to a tenant, but rather, he takes the premises as he finds them and bears the risk of any defective conditions which are within the area under his exclusive possession and control. . . . 'This rule, however, does not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively, to the landlord.' " *Thomas* v. *Roper,* supra, 349–50.

The defendants contend that the defective sewage system existed at the inception of the tenancy and was known to exist by the plaintiff; thus, they fall within the exception to the general rule. This claim has no merit in view of the court's finding that the defect did not arise until May, 1979, more than six months after the defendants entered into possession.

Finally, the defendants assert that they were constructively evicted from the premises and therefore released from their obligations under the lease. " 'A constructive eviction arises where a landlord, while not actually depriving the tenant of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable.' " *Thomas* v. *Roper,* supra, 349. Having already determined that the trial court's conclusion that the premises were tenantable was justified, we find this argument also to be without merit.

There is no error.

In this opinion the other judges concurred.