[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
On February 18, 1994, the plaintiff, a minor child, filed an eight count revised complaint, by her mother and next friend, against the defendant, Jefferson Street Medical Building, Inc. In her revised complaint, the plaintiff seeks damages for personal injuries and losses arising out of her alleged exposure to lead-based paint in the premises owned by the defendant.
Count one alleges that the defendant is liable for the injuries and losses sustained by the plaintiff, because the defendant violated certain statutes, which govern the presence of lead-based paint in residential structures. Count two alleges that the defendant is liable, because its alleged acts and/or omissions constituted negligence. Count three alleges that the defendant's conduct in allowing lead-based paint to exist on the interior and exterior surfaces of the subject premises constituted an absolute nuisance. Count four alleges that the defendant's act of leasing and/or otherwise allowing the plaintiff and her mother to enter and retain possession of the subject premises, despite the presence of allegedly dangerous, hazardous and toxic levels of lead-based paint, was an "abnormally dangerous" activity. Count five alleges that the defendant's act of leasing and/or otherwise allowing the plaintiff and her mother to enter and retain possession of the subject premises constituted a breach of the defendant's implied warranty of habitability to the plaintiff. Count six alleges that the defendant's act of leasing and/or otherwise allowing the plaintiff and her mother to enter and retain possession of the subject premises constituted a breach of the defendant's covenant of quiet enjoyment to the plaintiff. Count seven alleges that the defendant's failure to take the necessary steps to ensure that the plaintiff did not suffer exposure to dangerous, hazardous and toxic levels of lead-based paint, despite receiving notice from the local health director and/or building official that the subject premises contained such levels, constituted a willful, wanton and/or reckless disregard for the rights of the plaintiff. Finally, count eight alleges that the course of conduct engaged in by the defendant, as set forth in counts one through seven, constitutes unfair and deceptive acts or practices in violation CT Page 9836 of Connecticut's Unfair Trade Practices Act [CUTPA].
On March 3, 1994, the defendant filed a motion to strike counts one, four, five, six, seven and eight of the plaintiff's revised complaint, on the ground that said counts fail to state legally cognizable claims under Connecticut law. In support thereof, the defendant submitted a memorandum of law, copies of Administrative Regulations regarding Lead Poisoning Prevention and Control (§ 19a-111-1 through § 19a-111-11), and copies of the following cases: Hardy v. Griffin, 41 Conn. Sup. 283
(October 4, 1989, DeMayo, J.); Copeland v. People's SavingsBank, 8 Conn. L. Rptr. 358 (February 17, 1993, Thim, J.).
On April 11, 1994, the plaintiff filed a memorandum of law in opposition to the defendant's motion to strike. In support thereof, the plaintiff submitted a copy of a Draft of Task Force Committee 2 regarding the Risk of Lead Poisoning in Connecticut. Additionally, the plaintiff submitted copies of the following cases: Torres v. Melody, 7 CSCR 293 (February 13, 1992, Purtill, J.); Dickerson v. Little, 7 CSCR 797 (June 4, 1992, Gray, J.). Further, by letter dated July 22, 1994, the plaintiff informed the court that a case relied on by the defendant, Copeland v.People's Savings Bank, supra, 8 Conn. L. Rptr. 358, had been overturned by the appellate court. The plaintiff submitted a copy of the decision, Gore v. People's Savings Bank, Conn. App., Docket No. 12203 (July 12, 1994, Schaller, J.), for the court's consideration.
A motion to strike challenges the legal sufficiency of a pleading; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989); or any count thereof. Practice Book § 152. In ruling upon a motion to strike, the court is limited to the facts alleged in the pleading; Rowe v. Godou, 209 Conn. 273, 278,550 A.2d 1073 (1988); and must construe those facts in the light most favorable to the pleader. Gordon v. BridgeportHousing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action the complaint is not vulnerable to a motion to strike." Bouchard v. People's Bank, 219 Conn. 465, 471,594 A.2d 11 (1991).
Count I — Negligence Per Se
The defendant moves to strike count one of the plaintiff's CT Page 9837 revised complaint, on the ground that the allegations contained therein are contrary to Connecticut law and public policy, as set forth by statute and regulations, to the extent that said allegations attempt to hold the defendant strictly liable for the injuries and losses sustained by the plaintiff. Additionally, the defendant argues that in order for it to be held liable for a defective condition on its property, the plaintiff must allege the common law principles of fault and notice, which the plaintiff has failed to do. In response the plaintiff argues that the defendant's argument regarding count one is misplaced, because count one alleges a cause of action based upon negligence per se rather than strict liability.
"`The doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care." (Citation omitted.) Gore v. People's Savings Bank, supra, Conn. App., Docket No. 12203 (July 12, 1994, Schaller, J.), quoting Staudinger v. Barrett, 208 Conn. 94, 101,544 A.2d 164 (1988).
 Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery. That principle of the law sets forth two conditions which must coexist before statutory negligence can be actionable. First, the plaintiff must be within the class of persons protected by the statute. Second, the injury must be of the type which the statute was intended to prevent.
(Citations omitted; internal quotation marks omitted.) Gore v.People's Savings Bank, supra, Conn. App., Docket No. 12203 (July 12, 1994, Schaller, J.). See also Wright v. Brown, 167 Conn. 464,468-69, 356 A.2d 176 (1975); Coughlin v. Peters, 153 Conn. 99,102, 214 A.2d 127 (1965); Knybel v. Cramer, 129 Conn. 439, 443,29 A.2d 576 (1942); Toomey v. Danaher, 161 Conn. 204, 212,286 A.2d 293 (1971).
"Pursuant to § 288A of the Restatement (Second) of Torts, defendant can rebut an allegation of negligence per se through proof of an excuse for the violation." Gore v. People's SavingsBank, supra, Conn. App., Docket No. 12203 (July 12, 1994, Schaller, J.). CT Page 9838
 Section 288A provides that, unless the statute is construed not to permit an excuse, the violation of such a statute is excused when (a) the violation is reasonable because of the actor's incapacity; (b) he neither knows nor should know of the occasion for compliance; (c) he is unable after reasonable diligence or care to comply; (d) he is confronted by an emergency not due to his own misconduct; [and] (e) compliance would involve a greater risk of harm to the actor or to others.
(Internal quotation marks omitted.) Id. "In the case of strict liability, however, the defendant is liable without fault upon proof of the violation of the statute and proximate causation. When an excuse is not permitted under the construction of the applicable statute, strict liability exists." Id.
In the present case, the plaintiff does not allege or argue that the defendant should be held strictly liable for her injuries. Rather, she argues that the defendant's alleged violations of General Statutes §§ 21a-82, 47a-7, 47a-8 and19a-111 to 19a-111c constitute negligence per se. General Statutes § 21a-82 provides, in relevant part, that:
 (a) No person, firm or corporation shall use any paint on an interior surface of any tenement house, lodging house or boarding house . . . nor on or around, the interior or exterior surface of any door, window, porch, stairway or railing of any such tenement house, lodging house or boarding house unless such paint conforms to the standards as required in accordance with the Lead-Based Paint Poisoning Prevention Act, Chapter 63 of the Social Security Act, as amended.
 (b) No municipality, housing authority, redevelopment agency, community housing development corporation or other public authority shall use any paint on an interior surface of any building owned or being developed by it which serves as living quarters unless such paint conforms to the standards of the American National Standards Institute.
Additionally, General Statutes § 47a-7 provides, in relevant CT Page 9839 part, that:
 (a) A landlord shall: . . . (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition . . . .
Further, General Statutes § 47a-8 provides, in relevant part, that:
 The presence of paint which does not conform to federal standards as required in accordance with the Lead-Based Paint Poisoning Prevention Act, Chapter 63 of the Social Security Act, as amended, or of cracked, chipped, blistered, flaking, loose or peeling paint which constitutes a health hazard on accessible surfaces in any dwelling unit, tenement or any real property intended for human habitation shall be construed to render such dwelling unit, tenement or real property unfit for human habitation and shall constitute a noncompliance with subdivision (2) of subsection (a) of section 47a-7.
Finally, General Statutes § 19a-111c provides, in relevant part, that:
 The owner of any dwelling in which the paint, plaster or other materials contain toxic levels of lead and in which children under the age of six reside, shall abate or manage such dangerous materials consistent with regulations adopted pursuant to this section.
The appellate court has construed a violation of General Statutes § 47a-7 and § 47a-8 to constitute negligence per se. Gorev. People's Savings Bank, supra, Conn. App., Docket No. 12203 (July 12, 1994, Schaller, J.). See also Torres v. Melody, supra,7 CSCR 294-95 ("General Statutes §§ 47a-7 and 47a-8 . . . support a claim for negligence as a matter of law" because "the violation of a statute designed for the protection of the public is in itself negligence irrespective of whether the conduct which constitutes the violation is that of a reasonably prudent person"). Accordingly, the defendant's motion to strike count one of the plaintiff's revised complaint is denied. CT Page 9840
Count IV — Abnormally Dangerous Activity
The defendant moves to strike count four of the plaintiff's revised complaint, on the ground that the plaintiff has failed to allege conduct that is "intrinsically dangerous" or "abnormally dangerous." In response, the plaintiff argues that the defendant's act of leasing an apartment to the plaintiff, despite the presence of allegedly dangerous, hazardous and toxic levels of lead on the interior and exterior surfaces of the premises, constitutes an abnormally dangerous activity, because liability for injuries caused by exposure to environmental hazards is consistent with the policies behind the doctrine of "abnormally dangerous" activities.
In Connecticut, a defendant who engages in an activity which is characterized as either "abnormally dangerous" or "intrinsically dangerous" may be held strictly liable for injuries caused thereby. The rationale underlying the application of the doctrine of strict liability to this area has been explained as follows:
 [A] person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to the danger of probable injury, is liable if such injury results even though he uses all proper care.
Caporale v. C.W. Blakeslee Sons, Inc., 149 Conn. 79, 86,175 A.2d 561 (1961); Whitman Hotel Corp. v. Elliot and Watrous EngineeringCo., 137 Conn. 562, 570, 79 A.2d 591 (1951).
The issue of whether an activity is "abnormally dangerous" or "intrinsically dangerous" is a question of law for the court to decide. Caporale v. C.W. Blakeslee Sons, Inc., supra, 149 Conn. 86. The appellate courts of Connecticut have extended the theory of liability described above to cases involving blasting and explosives. See, e.g., Green v. Ensign-Bickford Co., 25 Conn. App. 479,482-83, 595 A.2d 1383 (1991) and cases cited therein Connecticut courts have refused to hold, however, that the operation of automobiles, rollercoasters or an electric power company are "intrinsically dangerous" activities, despite the fact that said operations have the potential to cause harm. See, e.g., Greeley v. Cunningham, 116 Conn. 515, 165 A.2d 678 (1933) (automobile); Godfrey v. Connecticut Co., 98 Conn. 63, 118 A. 446
CT Page 9841 (1922) (rollercoaster); McAdam v. Central Railway Electric Co.,67 Conn. 445, 35 A. 341 (1895) (electric power company operations).
In the present case, the plaintiff seeks to have the court place the dangers of the presence of lead-based paint in an apartment on a par with blasting and dynamite in terms of its ultra-hazardous nature. It appears, however, that Connecticut courts have sought to restrict the use of the doctrine to situations where the dangerous instrumentality is used in such circumstances as to create an unavoidable risk of damage.Caporale v. C.W. Blakeslee Sons, Inc., supra, 149 Conn. 83-84. The plaintiff has not alleged that the presence of lead-based paint in an apartment reflects a danger which is unavoidable.
Moreover, regulations issued by the Department of Health demonstrate that the dangers associated with lead-based paint can be avoided, so long as landlords comply with the statutory and regulatory schemes governing lead-based paint. Finally, the plaintiff has failed to direct the court to caselaw in Connecticut which indicates that the act of leasing an apartment containing lead-based paint is an "abnormally dangerous" or "intrinsically dangerous" activity. For these reasons, the defendant's motion to strike count four of the plaintiff's revised complaint is granted.
Count V — Implied Warranty of Habitability
The defendant moves to strike count five of the plaintiff's revised complaint, on the ground that it fails to state a legally cognizable claim under Connecticut law. In response, the plaintiff argues that the present case falls within the scope of the habitability provisions of the landlord/tenant statutes and that, consequently, she is entitled to plead and prove a cause of action alleging breach of the implied warranty of habitability.
A warranty of habitability generally relates to issues of whether rented premises are untenantable so that the obligation to pay rent is suspended. Johnson v. Fuller, 190 Conn. 552,461 A.2d 988 (1983); Thomas v. Roper, 162 Conn. 343, 294 A.2d 321
(1972). "`In general, there is no implied warranty of habitability given to a tenant, but rather, he takes the premises as he finds them and bears the risk of any defective conditions which are within the area under his exclusive possession and control. . . .'" Johnson v. Fuller, supra, 190 Conn. 558, CT Page 9842 quoting Thomas v. Roper, supra, 162 Conn. 349-50. "`This rule, however, does not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively, to the landlord.'" (Internal quotation marks omitted.) Johnson v.Fuller, supra, 190 Conn. 558, quoting Thomas v. Roper, supra,162 Conn. 350.
In count five, the plaintiff alleges that the defendant "deliver[ed]" to the plaintiff "premises that contained dangerous, hazardous and toxic levels of lead paint on its interior and exterior surfaces," despite the fact that the "defendant received notice from the local director of health and/or the local building official that the premises contained dangerous, hazardous and toxic levels of lead paint that posed a lead poisoning threat" to the plaintiff.
The plaintiff has alleged sufficient facts to support a claim of breach of implied warranty of habitability. Accordingly, the defendant's motion to strike count five of the plaintiff's revised complaint is denied.
Count VI — Covenant of Quiet Enjoyment
The defendant moves to strike count six of the plaintiff's revised complaint, on the ground that the plaintiff has failed to allege facts sufficient to state a claim of breach of the covenant of quiet enjoyment. In this regard, the defendant argues that the plaintiff has failed to allege either an actual or constructive eviction, and has failed to allege any interference with her possession of the property by anyone with paramount title. In response, the plaintiff argues that she need not allege either of these elements in order to support her claim of breach of the covenant of quiet enjoyment, because a constructive eviction occurs when there has been an act which renders the premises substantially untenantable, and the presence of lead-based paint in the subject premises rendered the premises per se uninhabitable and thus — as a matter of law — untenantable.
"The covenant of quiet enjoyment is that the grantee shall have legal quiet and peaceful possession, and is broken only by an entry on and an expulsion from the land or from an actual disturbance of possession by virtue of some paramount title or CT Page 9843 right." (Emphasis added.) Net Realty Holding Trust v. Nelson,33 Conn. Sup. 22, 25 (Super.Ct. 1976). See also Pullen v. Morris,8 CSCR 621, 622 (May 6, 1993, Hadden, J.).
"A constructive eviction arises where a landlord, while not actually depriving the tenant of the leased premises, has done or suffered some act which renders the premises untenantable."Pullen v. Morris, supra, 8 CSCR 622, citing Thomas v. Roper, supra, 162 Conn. 349. "In order to claim constructive eviction, [however], the tenant must abandon the property within a reasonable time." (Emphasis added.) Pullen v. Morris, supra,8 CSCR 622, citing Welk v. Bidwell, 136 Conn. 603, 609, 73 A.2d 295
(1950); Thomas v. Roper, supra, 162 Conn. 349.
In count five, the plaintiff fails to allege either an actual or constructive eviction, and fails to allege any interference with her possession of the property by anyone with paramount title. The plaintiff has failed to allege facts sufficient to state a claim of breach of the covenant of quiet enjoyment. Accordingly, the defendant's motion to strike count five of the plaintiff's revised complaint is granted.
Count VII — Reckless and Wanton Misconduct
The defendant moves to strike count seven of the plaintiff's revised complaint, on the ground that the plaintiff has failed to allege facts sufficient to state a claim of recklessness, because the plaintiff has simply repeated the negligence allegations of her complaint and added the words "reckless," "wanton," and "willful." In response, the plaintiff argues that, under Connecticut law, the allegations of count seven are sufficient to set forth a claim of recklessness.
In the case of Dubay v. Irish, 207 Conn. 518, 542 A.2d 711
(1988), the Supreme Court illuminated the difference between negligence and recklessness:
 Recklessness is a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable CT Page 9844 precautions to avoid injury to them. Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.
(Citations omitted; internal quotation marks omitted.) Id., 532. In the present case, the primary difference between the negligence and recklessness counts of the plaintiff's revised complaint is the allegation in the recklessness count that the defendant, despite having received actual notice of a lead hazard from municipal officials, did nothing to prevent the further exposure of the plaintiff to this danger.
The failure to act in the face of a known hazard can constitute recklessness. Tessmann v. Tiger Lee Construction Co.,228 Conn. 42, 54-55, 634 A.2d 870 (1993). The plaintiff alleges sufficient facts in count seven to support a claim of recklessness. Accordingly, the defendant's motion to strike count seven of the plaintiff's revised complaint is denied.
Count VIII — CUTPA
The defendant moves to strike count eight of the plaintiff's revised complaint, on the ground that it fails to state an actionable claim under CUTPA, because the plaintiffs have alleged personal injury rather than an "ascertainable loss of money or property," and because the allegations contained within count eight do not, as a matter of law, constitute "unfair trade practices." In response, the plaintiff argues that personal injuries are recoverable actual damages constituting an ascertainable loss of money or property, and the allegations in count eight sufficiently allege that the defendant's acts and practices violated a compelling public policy — namely, the prevention of lead poisoning in infants.
Under CUTPA, a plaintiff is entitled to recover actual damages for any ascertainable loss of money or property. Conawayv. Prestia, 191 Conn. 484, 493, 464 A.2d 847 (1983). No appellate court has addressed the issue of whether personal injuries are recoverable actual damages constituting an ascertainable loss of money or property. However, the Connecticut Supreme Court has defined the terms "ascertainable loss" and "money or property."
Whenever a consumer has received something other CT Page 9845 than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . To satisfy the "ascertainable loss" requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained. This approach is in keeping with the remedial aims of the statute. . . .
Hinchliffe v. American Motors Corp., 184 Conn. 607, 614-15,440 A.2d 810 (1981). See also Sipperly v. Burger King Corp., Superior Court, judicial district of New London at Norwich, Docket No. 94746 (March 17, 1992, Hurley, J.) ("to satisfy the ascertainable loss requirement, a plaintiff need only prove that it has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained").
In the present case, the plaintiff has alleged that the defendant knowingly leased to her an apartment containing unlawful levels of lead-based paint. Additionally, the plaintiff has alleged that she was unaware of this aspect of the apartment at the time she entered into the lease agreement. For these reasons, the plaintiff received something that she did not bargain for: an apartment with allegedly dangerous, hazardous and toxic levels of lead-based paint. Moreover, at least two superior court decisions have recognized CUTPA as a proper vehicle by which to recover for personal injuries. See, e.g., Spring v.Armstrong, 4 CSCR 225 (January 27, 1989, Corrigan, J.); Ogonowskiv. Incredible Motel, Inc., 1 Conn. L. Rptr. 164 (January 10, 1990, Hennessey, J.). Accordingly, the plaintiff has experienced an ascertainable loss of money or property.
Whether the plaintiff has alleged sufficient facts to support a CUTPA claim, however, depends not only on whether she has suffered an ascertainable loss of money or property, but also on whether the defendant's conduct constituted an unfair or deceptive act or practice. The test for determining whether a practice is unfair is commonly known as the "cigarette rule."Cheshire Mortgage Service Inc. v. Montes, 223 Conn. 80, 105,612 A.2d 1130 (1992). The cigarette rule states that unfair acts or practices depend upon: CT Page 9846
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].
Id., 105-06. All three of the criteria set forth in the cigarette rule need not be established in order for the court to determine that a particular act or practice is unfair. Id., 106. Rather, it is enough to show that the act or practice amounts to a violation of public policy. Id. See also Daddona v. Liberty Mobile HomeSales, Inc., 209 Conn. 243, 254, 550 A.2d 1061 (1988) (a violation of CUTPA may be established by showing "either an actual deceptive practice or a practice amounting to a violation of public policy"); Ogonowski v. Incredible Motel, Inc., supra1 Conn. L. Rptr. 165 ("a practice may be unfair because of the degree to which it meets one of the criteria or to a lesser extent it meets all three").
In the present case, count eight of the plaintiff's revised complaint alleges that the defendant's actions, as set forth in counts one through seven, amount to, inter alia, a violation of the landlord/tenant lead-based paint poisoning statutes. At least one of the public policies behind these statutes is the prevention of lead poisoning in people, particularly young children, caused by the presence of toxic levels of lead-based paint in residential structures. Housing Authority of EastHartford v. Olesen, 31 Conn. App. 359, 362 n. 5, 624 A.2d 920
(1993). See also Hardy v. Griffin, supra, 41 Conn. Sup. 287;Dickerson v. Little, supra, 7 CSCR 798
The court finds that the defendant's alleged violation of these statutes offends this public policy, and constitutes an unfair or deceptive practice under CUTPA. See, e.g., Dickerson v.Little, supra, 7 CSCR 798 (the concealment of and failure to remedy a known, latent, hazardous and unlawful condition of lead-based paint in an amount violative of the [applicable] statutes is an unlawful and deceptive practice which constitutes a CUTPA violation). Accordingly, the defendant's motion to strike count eight of the plaintiff's revised complaint is denied. CT Page 9847
Mary R. Hennessey, Judge