[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Robert Hackbarth (plaintiff) and his wife Elizabeth have brought this action for damages for breach of a lease covenant to pay rent and for alleged property damage. The plaintiffs own a single family home in Madison adjacent to their own home. On April 27, 1995, they entered into a written agreement CT Page 9573 with the defendants Robert Ross and Joseph Bunovsky, Jr., to lease to the defendants the home for one year commencing June 2, 1995, at a monthly rental of $950.00. The defendants paid a security deposit equal to one month's rent. The plaintiff had built the home himself twenty years earlier and had continuously rented it to third persons.
Problems between the plaintiffs and the defendants began to develop in October, 1995, when the defendants repeatedly insisted that the plaintiff repair the stove and, especially, the bathroom fan, the failure of which was causing a substantial amount of mildew to grow on the bathroom ceiling. The generational gap between the parties was aggravated by an expectation gap between them. The court infers from the evidence that by late 1995 the plaintiff deduced that the defendants were discontented troublemakers. They were, however, persons to whom he owed certain duties as a matter of common law and statutory fiat; General Statutes § 47a-7; and who owed duties to him. General Statutes §47a-11. In December, the defendants inadvertently gave the plaintiffs an unsigned rent check; they promptly remedied the oversight. The defendants paid the January, 1996, rent. In February, the defendants refused to pay the rent because of the plaintiff's failure to remedy the problem causing the mildew build-up in the bathroom. On February 14, 1996, the plaintiffs caused the defendants to be served with a notice to quit and thereafter commenced a summary process action. The defendants vacated the premises on April 14, 1996.
 I
Addressing the second count first, the plaintiffs allege that the "defendants during their occupancy of said leased premises, caused damage to the same as follows: Living room and master bedroom oak floors scratched and spotted; Fiberglass bathtub scratched; living room, dining room and master bedroom screens broken; Front door light protective glass missing, and door had to be cleaned, sanded, and painted; glass for one bathroom light missing back door repaired and painted [sic]; kitchen sink light broken off in socket; garage doors, walls, roof, floor, repaired; outside grounds required filling of holes, reseeding and removal of leaves."
The parties' lease provided, inter alia, that the "Tenant covenants with the said Landlord . . . to commit no waste, to repair all broken window glass, and to peaceably quit and surrender CT Page 9574 the premises at the end of the term . . . in as good condition as the same are or shall be put in by the Landlord during said term, reasonable wear and use thereof and damage by the elements excepted. . . ." The lease also provided that the defendant Ross could keep his dog on the premises, that "[t]he tenants are responsible for mowing the lawn and clearing the snow from the driveway," and that "[t]enants agree to purchase oil from Clintonville Oil Co."
The plaintiff had the burden of proving the disputed allegations of his complaint, specifically the nature and terms of the rental agreement and the defendant's breach of that agreement. See Jefferson Garden Associates v. Greene, 202 Conn. 128, 143,520 A.2d 173 (1987); Cook v. Teitelman, 102 Conn. 574, 577, 129 A. 546
(1925); Southland Corporation v. Vernon, 1 Conn. App. 439, 443,473 A.2d 318 (1984); S. H. V. C., Inc. v. Roy, 37 Conn. Sup. 579, 580,428 A.2d 806 (App. Sess. 1981).
"The landlord bears the burden of proof on all elements of a damage claim. This means that the landlord must prove that (a) the damage occurred, (b) it exceeded normal wear and tear, and (c) it was caused by the tenant, Kulenski v. Siclari, NH-539 (1990); Stutzv. Andren, SNBR-381 (1992); Lurie v. Baker, NH-499 (1990); Pilaginv. Michalski, H-603 (1985). Damage may be shown either by direct evidence or circumstantially. However, a tenant is not liable for damages that already existed when he moved into the apartment or for damage which occurred after he vacated, Wareck v. ConnecticutChair Car Co., NH-557, 6 CSCR 713 (1991); Slaughter v. McFarlane,
NH-583 (1992). Similarly, he is not liable for damage caused by persons for whom he is not responsible.
"The tenant is also not liable for what is usually described as `normal' or `reasonable' wear and tear, Dell'Oro v. Kelly,
SNBR-384 (1992); Grzewinski v. George, H-930 (1989); Opinion ofthe Attorney General, 6 CLT #38, p. 19 (1980). The determination of what is wear and tear, as distinct from what is property damage, is heavily dependent on the facts of the particular case; but in general it refers to deterioration of or damage to the property which can be expected to occur from normal usage. For example, the tenant is not liable for wear to a landlord-provided carpet which reflects normal usage of a rug. On the other hand, the tenant may be liable for the cost of cleaning a rug which has become urine-stained because of the tenant's dog, Toczydlowski v.Nicolaedis, NH-223 (1984). CT Page 9575
"Wear and tear also includes normal repainting and cleaning which occur at the end of a tenancy. The tenant is not [necessarily] liable for nail or pin holes in a plaster wall which would ordinarily be spackled as part of a routine repainting,Bronzi v. Barone, H-533 (1984); Pilagin v. Michalski,
H-603 (1985). Each claim must be evaluated on its own merits, in light of the general principle that some wear and tear is inevitable in rental property." DiBiaso v. Gargiulo, Superior Court, judicial district of New Haven, Housing Session, No. C.V.N.H. 9009-3970 (July 9, 1993).
Informed by these teachings and applying the applicable burden of proof, the court finds that the plaintiffs have not proven their claims of property damage. The oak floors were over twenty years old and had never been sanded; the defendants did not damage them beyond normal wear and tear. The fiberglass bathtub was the original bathtub installed in the house. When the defendants commenced their tenancy, the bathtub already had holes plugged with putty and would not hold water. The defendants did not create any new holes in the tub. The front door light protective glass was not damaged by the defendants but simply fell off. The plaintiffs similarly have clearly failed to sustain their burden of proof as to all other claims, except that as to the claim that screens were broken. As to this claim the evidence is in equipoise. The defendants admit that Ross's dog damaged the screens, damage which even the plaintiff concedes was not substantial. The defendants claim that they repaired the screens before they vacated the house. The plaintiff did not rebut that claim. Notably, although the plaintiffs caused their lawyer to send the defendants a letter dated May 10, 1996, stating, inter alia, that "my clients are assessing the damage done to the premises as a result of your occupancy of the same, and breach of the lease agreement," the plaintiffs failed to document by photograph any of the damage to the premises. Rather, a year later, shortly before trial, the plaintiffs took photographs of the premises which were of little or no probative value.
Finally, the plaintiffs' complaint that the defendants caused two eighteen inch holes in the land around the house conjures up the Supreme Court's admonition in State v. Pelletier,209 Conn. 564, 567, 552 A.2d 805 (1989): "Legal contentions, like the currency, depreciate through over-issue."
II
CT Page 9576
In the first count, the plaintiffs allege that the "defendants, by breach of their lease agreement failed to pay rent for the months of February, March and April, 1995, in the total sum of Two Thousand Eight Hundred Fifty ($2,850.00) Dollars." At trial, the plaintiffs were granted leave to amend their complaint, over the defendants objection, to include a claim for rent for the month of May, 1996.
 A.
The defendants claim that the plaintiffs "are not entitled to recover any rent after February 23, 1996, because they terminated the defendants' tenancy as of that date." The evidence is that the plaintiffs caused the defendants to be served with a notice to quit on February 14, 1997, calling for defendants to vacate the premises on or before February 23, 1996.
"The issuance by a landlord of a notice to quit is an unequivocal act terminating the lease agreement with the tenant. Termination of the lease does not terminate the tenancy since, upon service of a notice to quit, a tenancy at sufferance is created.Bushnell Plaza Development Corporation v. Fazzano,38 Conn. Sup. 683, 460 A.2d 1311 (1983). . . . In the present action, the [defendants each] became a tenant at sufferance on [February 14, 1996], when [each] was served with a notice to quit. Nonetheless, the landlord-tenant relationship continued.
"The statutory obligations of the landlord and tenant continue even when there is no longer a rental agreement between them. Aftera notice to quit has been served, for example, a tenant atsufferance no longer has a duty to pay rent. He still, however, is obliged to pay a fair rental value in the form of use and occupancy for the dwelling unit. Lonergan v. Connecticut Food Store, Inc.,168 Conn. 122, 131, 357 A.2d 910 (1975)." (Emphasis added.) Riverav. Santiago, 4 Conn. App. 608, 610, 495 A.2d 1122 (1985). The obligation is one implied in law and, in this State, derives fromGunn v. Scovil, 4 Day 228 (1810), in which the court held that an action of indebitatus assumpsit could be supported on the implied promise, arising merely from use and occupation of real estate, and without an express promise to pay rent. The obligation is now embodied in General Statutes § 47a-3c which provides: "In the absence of agreement, the tenant shall pay the fair rental value for the use and occupation of the dwelling unit."
Since the plaintiffs served the defendants with a notice to CT Page 9577 quit, the defendants are not liable to pay rent. Since the plaintiffs neither allege in their complaint nor argue in their brief that the defendants are liable to pay use and occupancy, the plaintiffs are not entitled to that relief either. See New Haven v.Mason, 17 Conn. App. 92, 94-96, 550 A.2d 18 (1988).[1] However, it remains to be determined whether the plaintiffs may recover for breach of the lease after their service of the notice to quit on the defendants, under the sole case on which they rely in their brief, Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.,18 Conn. App. 384, 388, 558 A.2d 265 (1989).
 B.
In Rokalor v. Connecticut Eating Enterprises, Inc., supra,18 Conn. App. 384, the Appellate Court synthesized the existing law with respect to a landlord's remedies when a tenant breached a lease for commercial property. The court explained: "When the lessee breaches a lease for commercial property, the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender. Sagamore Corporation v. Willcutt, 120 Conn. 315,317-18, 180 A. 464 (1935); Dewart Building Partnership v. UnionTrust Co., 4 Conn. App. 683, 687, 496 A.2d 241 (1985). Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. Dewart BuildingPartnership v. Union Trust Co., supra. When the landlord elects to terminate the tenancy, however, the action is one for breach of contract; Sagamore Corporation v. Willcutt, supra; and, when the tenancy is terminated, the landlord is obliged to mitigate his damages. Dewart Building Partnership v. Union Trust Co., supra. When the tenancy ends, the tenant is released from his obligations under the lease and is, therefore, no longer obliged to pay rent.Feneck v. Nowakowski, 146 Conn. 434, 436, 151 A.2d 891 (1959)." (Emphasis added.) Id., 388-389. "`A lease is nothing more than a contract. Robinson v. Weitz, 171 Conn. 545, 551, (370 A.2d 1066
(1976)]. Thus, as in any other contract action the measure of damages is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397,404-405, [365 A.2d 1086 (1976)]. As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of contract of lease. The plaintiff would be entitled to recover the damages which would naturally follow from such a breach. Sagamore Corporation v. Willcutt, [supra, 320].' See CT Page 9578 also Danpar Associates v. Somersville Mills Sales Room, Inc.,182 Conn. 444, 445-46, 438 A.2d 708 (1980); 49 Am.Jur.2d, Landlord and Tenant § 183 [1988]. . . . [I]n an action for breach of a lease, the amount of rent agreed to by the parties is a proper measure of damages." Id., 389-90.
Rokalor, however, involved a commercial lease and the court's language was explicitly circumscribed so as to apply to commercial leases. See Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.,
supra, 18 Conn. App. 388. The plaintiffs' claim depends on whetherRokalor also applies to residential leases. The court concludes that it does.
At common law and well into this century, a lease was considered to be a conveyance of an interest in land and governed by the rules applied to real property transactions. See Aprile v.Colonial Trust Co., 118 Conn. 573, 577, 173 A. 237 (1934); see generally, Javins v. First National Realty Corp., 428 F.2d 1071
(D.C. Cir. 1970). As late as Sagamore Corporation v. Willcutt,
supra, 120 Conn. 319, the court stated that "a lease is primarily a conveyance of an interest in land. . . ." In the following paragraph of that case, however, the court "consider[ed] a lease as a unilateral contract, or a bilateral contract that has been wholly performed by the lessor" and governed by contract law. Id., 319-320. Today it is well-settled that "a lease is a contract under which an exclusive possessory interest in property is conveyed.Monarch Accounting Supplies, Inc. v. Prezioso, 170 Conn. 659,663-64, 368 A.2d 6 (1976); Jo-Mark Sand Gravel Co. v. Pantanella,139 Conn. 598, 601, 96 A.2d 217 (1953)." Clean Corp. v. Foston,33 Conn. App. 197, 201, 634 A.2d 1200 (1993). More importantly to the issue here, it is settled that "`[w]here the action is one for breach of the lease, basic contract principles apply.' Rokalor,Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384,388-89, 558 A.2d 265 (1989)." K R Realty Associates v. Gagnon,33 Conn. App. 815, 820, 639 A.2d 524 (1994).
There is no reason, apart from a statutory prohibition, why the law with respect to actions for breach of a lease for residential premises should differ from the law with respect to commercial leases. See, e.g., Smith v. Frank, 252 App.Div. 834,299 N.Y.S.2d 125, 126, affirmed, 277 N.Y. 517, 13 N.E.2d 454
(1937). "A lease is a contract and questions concerning it are determined in accordance with usual contract law. Robinson v.Weitz, 171 Conn. 545, 551, 370 A.2d 1066 (1976)." Amwax Corporationv. Chadwick, 28 Conn. App. 739, 741, 612 A.2d 127 (1992). The CT Page 9579 classic common law remedy for breach of a lease is an action for damages. See, e.g., John J. Brennan Construction Corporation v.Shelton, 187 Conn. 695, 696, 448 A.2d 180 (1982); Caramini v.Tegulias, 121 Conn. 548, 451, 186 A. 482 (1936). The Rokalor
court itself recognized that the "rules applying to contracts generally with respect to breach, the right to damages for breach, and the measure of damages, apply to leases as well as contracts." (Internal quotation marks omitted.) Rokalor v. Connecticut EatingEnterprises, supra, 18 Conn. App. 391. Rokalor has been cited by trial courts in connection with actions on residential leases.Danielson v. Russell, Superior Court, judicial district of Middlesex, No. 64703 (1994); Rieck v. Taub, Superior Court, judicial district of Hartford-New Britain at Hartford, No. CV 9011-3715 (1992); Haros Enterprises v. Buonauto, Superior Court, judicial district of Waterbury, No. 103737 (1992). Indeed, it is not clear whether Sagamore Corporation v. Willcutt, supra,120 Conn. 315, on which Rokalor was largely based, was an action for breach of a commercial or residential lease. See A-74 Connecticut Supreme Court Records and Briefs, June Term 1935, Part 2, position 1.[2] Since the defendants can point to nothing in Title 47a which prevents the plaintiffs from bringing a common law action for breach of contract,[3] the court holds that the plaintiffs may maintain this action.
 C.
The court now turns to the defendant's special defense that the plaintiffs "broke [the] lease by not providing a suitable/adequate living environment." See General Statutes § 47a-7.
"In the absence of a statute or covenant to the contrary, the lessor does not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the lessee." Thomas v. Roper, 162 Conn. 343, 348, 294 A.2d 321
(1972); see Ciavaglia v. Bolles, 38 Conn. Sup. 603, 605,457 A.2d 669 (1982). This common law principle is significantly modified by General Statutes § 47a-7[4] which, among other things, requires the landlord to "(1) Comply with the requirements of chapter 368o and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant, a member of his family or other person on the premises with his consent, in which case such duty shall be CT Page 9580 the responsibility of the tenant . . . (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him. . . ."
In a defense of a summary process action based on § 47a-7, "[t]he defendant[s'] must prove that the premises were in such a state in the month of nonpayment so as to render the [premises] unfit and uninhabitable. Alteri v. Layton, [35 Conn. Sup. 261, 267,408 A.2d 18 (1979)]. The defects must materially and substantially affect the tenants' use of the premises. It is not enough for the tenant to show that the premises are not in full code compliance. . . . The requested repair involved must be `one necessary to put and keep the premises in a fit and habitable condition.' [General Statutes §] 47a-7 (a)(2), Visco v. Cody, [16 Conn. App. 444,453, 547 A.2d 935 (1988)]. If minor repairs were sufficient to trigger the statutory defenses of unfit and uninhabitable `what was intended as a shield for the benefit of tenants would be metamorphosed into a sword to deprive landlords of their property.'Visco v. Cody, supra 453. Mere technical or cosmetic violation of governmental codes are not sufficient to rise to the level of the defense of unfit and uninhabitable.
"`To be successful a tenant must demonstrate actual and serious deprivation of the use contemplated by the parties to the ease.'" Gayle v. Young, Superior Court, judicial district of Fairfield, Housing Session, No. SPBR 9409-27973 (1995). "The code violations must be substantial and a serious deprivation to health and safety for those to be grounds for a rent abatement or sanctions of any sort." Id. "Whether the premises are untenantable is a question of fact for the trier, to be decided in each case after a careful consideration of `the situation of the parties to the lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed.' Reid v. Mills, 118 Conn. 119, 122, 171 A. 29 [1934]; seeHayes v. Capitol Buick Co., [119 Conn. 372, 378-79, 176 A. 885
(1935)]; Tungsten Co. v. Beach, 92 Conn. 519, 524, 103 A. 632
[1918]." Thomas v. Roper, 162 Conn. 343, 347, 294 A.2d 321 (1972); accord, Johnson v. Fuller, 190 Conn. 552, 556-57, 461 A.2d 988
(1983).
Applying these criteria, the court finds that the demised premises was a single family house. By November, 1995, the defendants had verbally and in writing notified the plaintiffs that CT Page 9581 the bathroom ceiling and walls were infested with mildew. The condition apparently was caused by the coincidence of a defective bathroom fan and the moisture from the shower; that is, from improper ventilation. The named plaintiff attempted to repair the fan, but the repair lasted only a week.
The defendants are two young males, both of whom were employed, one or both of whom were actively dating women, both of whom appeared to be fastidious about his appearance. They undoubtedly used the shower a good deal.
The town's director of health, to whom the defendants complained, opined that the mildew and ventilation condition constituted a risk to the defendants' health and a potential
unsanitary condition. However, he did not serve the plaintiffs with a notice of code violation. The director suggested to the defendants that they use bleach on the walls. They did not do so because whenever they tried to clean the walls they rubbed away the sheetrock into which the mildew was imbedded.
Three additional factors are of critical significance. First, the photographs taken of the bathroom by the defendants before they vacated depict a considerable amount of mildew throughout the bathroom ceiling and part of the walls. Second, the defendant Bunovsky suffered from asthma and was genuinely and reasonably concerned about the health effects of the mildew. Third, Bunovsky was constrained to shower elsewhere, at his fiance's residence or at the gym, because of his concern about the mildew infestation.
The test for untenantability, cited supra, as articulated by our appellate courts, allows in certain circumstances for a finding of untenantability as to one tenant but not another. The defendant Bunovsky has proven by a fair preponderance of the evidence that the house was untenantable as to him. The court will judicially notice dictionary definitions. Bulkeley v. WorthingtonEcclesiastical Society, 78 Conn. 526, 534, 63 A. 351 (1906). Therefore, the court will take judicial notice that mildew is a fungus and that asthma is a chronic respiratory disease, often arising from allergies, and accompanied by labored breathing, chest constriction, and coughing. The American Heritage Dictionary (2d Col. Ed. 1985). There was no evidence of the effect of mildew on an asthmatic, and the court cannot take judicial notice of that phenomenon at this late stage of the proceedings. See Marshall v.DelPonte, 27 Conn. App. 346, 352, 606 A.2d 716 (1992). However, because the defendant Bunovsky objectively, reasonably believed CT Page 9582 that the mildew was a hazard to his asthmatic condition and acted on that belief and fear by showering elsewhere, the court finds that as to him, the house was not habitable.
As to the defendant Ross it is a much closer case. After much reflection, and upon a review of the facts and the applicable case law recited supra, the court holds that the defendant Ross has not sustained his burden of proof on this defense by a fair preponderance of the evidence. Ross has not shown that the mildew and ventilation problem, annoying as it undoubtedly was, materially interfered with his use of the house. The court does not find that Ross was reasonably concerned about the ill-effects of the mildew or that he altered his daily routine because of the mildew. The court cannot take judicial notice at this juncture of any health effects mildew may have on anotherwise healthy young male. Cf.Marshall v. DelPonte, supra, 27 Conn. App. 352.
 D.
A violation of General Statutes § 47a-7 is a defense to an action for rent. General Statutes § 47a-4a. "`Rent' means all periodic payments to be made to the landlord under the rental agreement." General Statutes § 47a-1(h). Technically, the present action is not one for rent but a common law action for damages. General Statutes § 47a-4a, therefore, is not literally applicable.
However, "[i]n an action by a landlord for breach by the tenant of a lease, the amount of the damage, prima facie, is the rent reserved. . . ." (Citations omitted.) Tov Knitting Mills, Inc.v. Starr Realty Co., 148 App.Div.2d 526, 527, 538 N.Y.S.2d 861, 862
(1989); see Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.,
supra, 18 Conn. App. 389 (in action for breach of lease, "the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff"). "In other contexts, `we have previously used statutes as a useful source of policy for common law adjudication, particularly if there was a close relationship between the statutory and common law subject matters.' Fahy v. Fahy, [227 Conn. 505, 514, 630 A.2d 1328
(1993]; accord New England Savings Bank v. Lopez, 227 Conn. 270,281, 630 A.2d 1010 (1993); Hamm v. Taylor, 180 Conn. 491, 495,429 A.2d 946 (1980); Canton Motorcar Works, Inc. v. DiMartino,6 Conn. App. 447, 453, 505 A.2d 1255, cert. denied, 200 Conn. 802,509 A.2d 516 (1986). We consider this adjudicative technique to be appropriate in this case." Williams Ford, Inc. v. Hartford CourantCo., 232 Conn. 559, 585, 657 A.2d 212 (1995). For this reason, this CT Page 9583 court holds that a violation of General Statutes § 47a-7 is a defense to an action for damages based on the breach of a covenant in a lease to pay rent.[5]
"It is well established that in an action for damages for breach of a lease, the injured party is under a duty to mitigate his or her damages. . . . The duty to mitigate requires a landlord to make reasonable efforts to minimize damages . . . which includes taking steps to relet the premises." (Citations omitted; internal quotation marks omitted.) Rokalor, Inc. v. Connecticut EatingEnterprises, Inc., supra, 18 Conn. App. 390. "In a breach of contract action, the defendant bears the burden of proving that the plaintiff failed to exercise reasonable care to mitigate damages.Preston v. Keith, 217 Conn. 12, 20-21 n. 9, 584 A.2d 439 (1991);Newington v. General Sanitation Service Co., 196 Conn. 81, 86,491 A.2d 363 (1985)." Lynch v. Granby Holdings, Inc.,37 Conn. App. 846, 850, 658 A.2d 592 (1995), certification improvidently granted and appeal dismissed, 235 Conn. 941, 669 A.2d 578
(1996); cf. DeMatteo v. Villano, Superior Court, judicial district of New Haven, Housing Session, CVNH 9604-7493 (July 14, 1997).
Here, the defendant Ross remained in the house until April. The court, crediting the testimony of the named plaintiff with respect to this matter, finds that the plaintiffs fulfilled their duty to mitigate their damages, and that the defendant Ross has failed to sustain his burden to prove otherwise.
Judgment may enter in favor of the plaintiffs against the defendant Robert Ross, only, in the amount of $3,800.00, on the second count. Judgment may enter for the defendant Ross on the first count. Judgment may enter in favor of the defendant Bunovsky on both counts.[6]
BY THE COURT
Bruce L. LevinJudge of the Superior Court