[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
In this case, the plaintiffs, minor children, claim they became lead poisoned while residing in premises owned by the defendants. The Lovick children inhabited premises at 82-88 South Water Street in East Windsor from November 1991 through January 1993. (Revised Complaint dated July 10, 1996, First Count, ¶ 13). At that time, the property was part of the estate of Nicholas A. CT Page 1723 Nigro, who died testate on June 8, 1989, and the defendants [hereafter "Nigro defendants"] Thomas N. Nigro, Marilyn Barnes and Pamela-Champagne were co-administrators of the estate. (Id., ¶¶ 3, 4, 5, 8, 9, 10). Jerrold R. Starr and Lorette R. Starr [hereafter "Starr defendants"] are record owners of premises at 14-16 Windsor Street in Enfield, Connecticut. (Id., ¶ 11). The Lovick children inhabited these premises from April 1993 through June 1994. (Ninth Count, ¶ 13).
The first through eighth counts of the Revised Complaint are directed against the Nigro defendants. They have moved to strike counts 1, 3, 4, 5, 6 and 8. The ninth through eighteenth counts of the Revised Complaint are against the Starr defendants. They have moved to strike counts 9, 11, 12, 13, 14, 15, 16 and 18. The defendants make identical arguments.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Waters v.Autuori, 236 Conn. 820, 825, ___ A.2d ___ (1996). "If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied." RK Constructors,Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." Id., 383 n. 2. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Waters, supra,236 Conn. at 825.
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions
stated in the pleadings." (Emphasis in original.) Mingachos v.CBS. Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "If the motion attacks the entire pleading, it will fail if any part of the pleading is legally sufficient." Grier v. West Haven PoliceDept., 40 Conn. Sup. 221, 222, aff'd, 8 Conn. App. 142 (1984).
Counts 1 and 9 (Negligence Per Se)
The defendants argue that the first and ninth counts are legally insufficient on the sole ground that specific allegations of notice are essential to state a cause of action for negligence per se under Gore v. People's Savings Bank, 235 Conn. 360,665 A.2d 1341 (1995). The plaintiffs argue that they have alleged CT Page 1724 sufficient facts to impute constructive notice to the defendants. The court agrees.
As this court recently stated in Sanchez v. General UrbanCorp., Superior Court, judicial district of New Haven, Docket No. 378774 (February 6, 1997, Lager, J.):
 While the Gore court stated that "the common law of Connecticut has always included a notice requirement as part of a tenant's cause of action," Gore, supra, 235 Conn. at 388, it also recognized that a defendant landlord can avoid liability upon proof that the landlord "`neither knows nor should know of the occasion for compliance'" with the statute. Id., 377, citing 2 Restatement (Second), Torts § 288A (1965). Thus, upon remand, in Gore v. People's Savings Bank, 40 Conn. App. 219, 224 n. 5, 670 A.2d 332 (1996) (Gore II), the Appellate Court approved the trial court's jury instructions placing the burden of proof on the defendant landlord to show a lack of notice or knowledge if the defective condition existed before the tenant moved into the premises, while requiring the plaintiff to prove actual notice of the condition if it arose after the plaintiff moved into the leased premises.
 This approved allocation of the burden of proof is consistent with the commentary to 2 Restatement (Second), Property, Landlord and Tenant, § 17.6, comment (c) (1977), that a landlord ordinarily "will be chargeable with notice of conditions which existed prior to the time that the tenant takes possession." Moreover, it is consistent with a long line of Connecticut Supreme Court cases holding landlords liable in negligence for known patent and latent dangerous and defective conditions that existed at the time the lease was made. Webel v. Yale University, 125 Conn. 515, 521, 7 A.2d 215 (1939); Miner v. McNamara, 81 Conn. 690, 694, 72 A. 188 (1909). Indeed, the cited cases were early pioneers in a line of cases recognizing exceptions to the general rules of nonliability in tort for landlords See Jacobs, "Tort Liability of a Connecticut Landlord," 15 Conn. B.J. 315 (1941); W. Prosser W. Keeton, Torts (5th ed. 1984) § 63.
CT Page 1725
In this case, the first and ninth counts allege that the defendants leased premises that exposed the plaintiffs to dangerous, hazardous and toxic levels of lead (¶ 13) and failed to "de-lead" the premises before the plaintiff inhabited the premises (¶ 14(c)). These minimal allegations, read in the light most favorable to the plaintiffs, support a claim that an alleged defect violative of statute or regulation existed before or at the time the plaintiff moved into the premises, thus imputing notice to the defendant landlords. These allegations are sufficient to allow these counts to survive a motion to strike and, accordingly, the defendants' motions to strike counts 1 and 9 are denied.
Counts 3 and 11 (Absolute Nuisance)
The defendants move to strike the third and eleventh counts claiming they fail to state sufficient facts to allege the necessary elements of absolute nuisance. In particular, the defendants contend that lead paint is not a nuisance, that renting out property is not unlawful or unreasonable and that there are no facts alleged to establish that the defendants intended to bring about the conditions claimed to be a nuisance. This last claim is dispositive.
The revised complaint alleges that, pursuant to a lease agreement, the plaintiffs leased and inhabited the premises and were exposed to dangerous, hazardous and toxic levels of lead paint on the interior and exterior surfaces "the existence of which has a natural tendency to create danger, especially to children under the age of six" (Counts 3 and 11, ¶ 13). InSanchez v. General Urban Corp., supra, this court concluded that allegations identical to these were insufficient to state a cause of action for absolute nuisance.
To be actionable, absolute nuisance requires that the defendants acted intentionally "to bring about the conditions which are in fact found to be a nuisance." Beckwith v. Stratford,129 Conn. 506, 511, 29 A.2d 775 (1942). In their memorandum, the plaintiffs state that "the condition complained of," i.e. the nuisance, is "the presence of intact and defective lead-based paint." Consolidated Memorandum of Law in Opposition to Motion to Strike, p. 8. They argue, as in Sanchez, that allegations that the defendants rented the premises to a family with children under the age of six, thereby intentionally exposing the minor CT Page 1726 plaintiffs to the painted surfaces of the premises, is the intentional act that brings about this condition.[1] This logic is faulty because the intentional act must have a role in bringing about the condition — the presence of intact and defective lead-based paint — and there is nothing in the act of leasing premises which brings about such a condition.
As this court stated in Sanchez, supra, in rejecting this argument:
 The court sees no direct or inherent relationship between the landlord's act, albeit intentional, of leasing premises to a family with children under the age of six and the condition claimed to be a nuisance — the presence of intact and defective lead-based paint. Moreover, the court has grave concerns that recognizing a cause of action in absolute nuisance under facts as alleged would open a "back door" to holding landlords strictly liable for lead-based paint hazards in contravention of both legislative intent and the holding in Gore, supra.
 "A nuisance . . . describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property. State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. supra, at 183. The term nuisance refers to the condition that exists and not to the act or failure to act that creates it. If the creator of the condition intends the act that brings about the condition found to be a nuisance, the nuisance thereby created is said to be absolute and its creator is strictly liable. DeLahunta v. Waterbury, 134 Conn. 630, 633-34, 59 A.2d 800
(1948)." Quinnett v. Newman, 213 Conn. 343, 348, 568 A.2d 786 (1990). When an absolute nuisance is alleged, contributory negligence is not a defense because "the essence of the wrong is conduct which is intentional . . . that conduct goes beyond a mere lack of proper care. . . ." Beckwith v. Stratford, supra, 129 Conn. at 511.
 If the act of renting premises to a family unit with children under six who will be exposed to its painted surfaces suffices to state a cause of action in absolute nuisance then the effect would be to hold a CT Page 1727 landlord strictly liable for a defect of which the landlord was unaware or could not have become aware in the exercise of reasonable care. The allegation that the existence of lead paint in intact and nonintact conditions was violative of statute and regulation does not, in the court's opinion, convert the act of renting the apartment into an absolute nuisance. Unlike the negligence per se count, where a defendant landlord can defend on the ground of lack of knowledge of any defect at the time of leasing the premises or assert another valid excuse or justification for violating the statutes or regulations, here proof of the intentional act of renting the premises which may have contained defects violative of statute or regulation would suffice to hold the landlord liable for tort damages. Such liability would fly in the face of Gore, supra, 235 Conn. at 383.
Accordingly, since the court has concluded that counts 3 and 11 fail to state a cause of action for absolute nuisance, it is unnecessary to address the defendants' other contentions. The defendants' motions to strike these counts are granted.
Counts 4 and 12 (Abnormally Dangerous Activity)
The defendants move to strike counts 4 and 12 on the grounds that the plaintiffs have failed to state a cause of action as a matter of law because the use of lead-based paint in residential property is not an "abnormally dangerous" activity. The defendants argue that abnormally dangerous activities are those that cannot be done without risk, and that reasonable care can eliminate the risks associated with lead paint. The plaintiffs argue that the defendants' conduct in leasing premises with toxic levels of lead paint on the exterior and interior surfaces, knowing that children under the age of six would be occupying the premises, is an abnormally dangerous activity because of the severe danger defective lead-based paint surfaces pose to children. The plaintiffs contend that Connecticut's regulatory scheme supports this conclusion.
In Sanchez v. General Urban Corp., supra, this court concluded as a matter of law that leasing premises that contain allegedly toxic levels of lead paint is not an abnormally dangerous activity, agreeing with many other decisions of the Superior Court. Hall v. Rivera, Superior Court, judicial district CT Page 1728 of Milford, Docket No. 049449 (Oct. 29, 1996, Skolnick, J.);Wilson v. Bellisle, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 546030 (Oct. 3, 1996, Hennessey, J.); Scott v. Duhl, Superior Court, judicial district of New Haven, Docket No. 379299 (Sept. 30, 1996, Corradino, J.); Delgado v. Learmand, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 471591 (July 12, 1996, Arena, J.); Leblanc v. Munger, Superior Court, judicial district of Windham at Putnam, Docket No. 052267 (March 13, 1995, Sferrazza, J.); Gutierrez v. Jefferson Street MedicalBldg., Superior-Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529230 (September 27, 1994, Hennessey, J., 12 Conn. L. Rptr 472).
In this case, the plaintiffs expand on their argument that the regulatory scheme demonstrates an intent to deem defective lead-based paint as abnormally or intrinsically dangerous. Drawing an analogy to environmental hazards the plaintiffs citeBranch v. Western Petroleum, Inc., 657 P.2d 276 (Utah 1982), a decision of the Utah Supreme Court involving ground water pollution. That court found, on its facts, that the ponding of toxic formation water constituted an abnormally dangerous and inappropriate activity for which the polluter should be held strictly liable. Id. at 274. The court was influenced by Utah's declared public policy to protect the purity of its surface and subterranean waters. Id. at 273.
The plaintiffs argue that Connecticut's lead paint abatement regulations reflect an equally important policy position that requires imposition of strict liability under the abnormally dangerous activity doctrine because, they contend, lead poisoning has such deleterious effects on both individuals and society as a whole. Our legislature has already addressed the policy question regarding lead-based paint hazards by establishing a statutory and regulatory scheme for inspection and abatement that does not impose strict liability. Gore, supra, 235 Conn. at 388. This court is in no position to hold otherwise. Id. at 391.
Thus, for the reasons stated in Sanchez and above, the defendants' motions to strike counts 4 and 12 are granted.
Counts 5, 13 and 14 (Implied Warranty of Habitability)
The Nigro defendants move to strike count 5 and the Starr defendants move to strike counts 13 and 14, which allege a CT Page 1729 failure to make the demised premises habitable, on the grounds that the allegations sound in tort not contract and that the plaintiffs have failed to plead all the elements to recover for a breach of an implied warranty of habitability. The plaintiffs respond that these counts are based on breach of contract and are properly alleged.
The gravamen of defendants' argument is that since the injuries alleged in these counts are identical to those alleged in the negligence counts, the counts sound in negligence not breach of warranty. The defendants contend that the landlord-tenant statutes, i.e., Conn. Gen. Stat. §§ 47a-4a,47a-12, and 47a-14, provide the tenant with procedures and remedies in the event of breach of the implied warranty of habitability found in Conn. Gen. Stat. § 47a-7 (a)(2)[2], but that the implied warranty itself does not provide an affirmative ground upon which to seek damages for personal injury.
There is a fine, albeit distinguishable, line between a cause of action based on negligence and one based on breach of an implied warranty under these circumstances. Under a negligence theory, the landlord has a duty, based on common law or statute, to remedy defective lead-based hazards and fails to use reasonable care to do so. Under a warranty theory, the landlord has an obligation to ensure that the premises are fit for human habitation at the inception of the tenancy and fails to fulfill this obligation regarding defective lead-based hazards. "As a consequence, liability for negligence and for breach of warranty turn out to be virtually the same: the former for failure to use reasonable care to cure a known (or constructively known) defect, and the latter for breach of a covenant not to permit a known (orconstructively known) defect." (Emphasis supplied.) GeorgeWashington University v. Weintraub, 458 A.2d 43, 52 (D.C.App. 1983, Ferren, J. dissenting).
Other jurisdictions have recognized an affirmative cause of action for damages based on the implied warranty of habitability. See German v. Federal Home Loan Mtg. Corp., 885 F. Sup. 537, 568
(S.D.N.Y. 1995) (interpreting New York law); Johnson v. ScandiaAssociates, Inc., 641 N.E.2d 51 (Ind.App. 1994); Kuriger v.Cramer, 498 A.2d 1331, 1336-37 (Pa.Super. 1985); Detling v.Edelbrock, 671 S.W.2d 265 (Mo. 1984); George WashingtonUniversity v. Weintraub, supra, 458 A.2d at 47; Teller v. McCoy,253 S.E.2d 114, 127-28 (W.Va. 1979); Fair v. Negley,
CT Page 1730
390 A.2d 240, 242 (Pa.Super. 1978); Jarrell v. Hartman,48 Ill. App.3d 985, 363 N.E.2d 626 (1977); Mease v. Fox,200 N.W.2d 791, 796 (Iowa 1972). See generally 5 Harper, James Gray, The Law of Torts, § 27.16, p. 291 (2d ed. 1986). Likewise, counts seeking damages for lead poisoning based on breach of the implied warranty of habitability have not been stricken in this state. Cruz v. Tosado, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 531845 (May 22, 1995, Hennessey, J., 14 Conn. L. Rptr. 272);Guitterez v. Jefferson Street Medical Bldng., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529230 (Sept. 27, 1994, Hennessey, J.).
Nonetheless, defendants are correct that actual or constructive notice is required to support a claim for warranty liability, just as it is to support a claim based on negligence. See Restatement (Second) Property § 17.6, quoted with approval in Gore, supra, 235 Conn. at 383-85.
 In general, there is no implied warranty of habitability given to a tenant, but rather, he takes the premises as he finds them and bears the risk of any defective conditions which are within the area under his exclusive possession and control. Webel v. Yale University, 125 Conn. 515, 518, 7 A.2d 215; White v. DeVito Realty Co., 120 Conn. 331, 334, 180 A. 461; Valin v. Jewell, 88 Conn. 151, 156, 90 A. 36; Gallagher v. Button, 73 Conn. 172, 175-76, 46 A. 819. "This rule, however, does not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively, to the landlord." Civale v. Meriden Housing Authority, 150 Conn. 594, 597, 192 A.2d 548; Masterson v. Atherton, 149 Conn. 302, 306, 179 A.2d 592.
Thomas v. Roper, 162 Conn. 343, 349-50, 294 A.2d 321 (1972); seeJohnson v. Fuller, 190 Conn. 552, 558, 461 A.2d 988 (1983).
In the fifth count of the revised complaint the plaintiffs allege that the Nigro defendants "deliver[ed] . . . a residence that contained dangerous, hazardous and toxic levels of lead paint" (¶ 16), did so in violation of statute (¶ 18(a)), failed to inspect and de-lead the premises before the tenancy (¶ 18 (b)(c)(f)(h)) and failed to warn the tenants regarding proper CT Page 1731 de-leading and inspections (¶ 18(e)(g)). Paragraph 18 also alleges that the defendants knew or should have known the premises were constructed before 1978 and could contain toxic levels of lead paint. (¶ 18(e) — (i). The fifth count further alleges that the defendants were on notice that the premises "contained dangerous, hazardous and toxic levels of lead paint that posed a lead poisoning threat . . . to minor children" (¶ 19). These allegations are sufficient for a claim of breach of implied warrant of habitability. See Gutierrez v. JeffersonStreet Medical Building, supra.
In the thirteenth count of the revised complaint, the plaintiffs allege that the Starr defendants "deliver[ed] . . . a residence that contained dangerous, hazardous and toxic levels of lead paint (¶ 16), did so in violation of statute (¶ 19(a)), failed to inspect and de-lead the premises before the tenancy (¶ 19(b)(c)(f)(h)) and failed to warn the tenants regarding proper de-leading and inspections (¶ 18(e)(g)). Paragraph 19 also alleges that the defendants knew or should have known the premises were constructed before 1978 and could contain toxic levels of lead paint. (¶ 18(e) — (i). These allegations, as well, are sufficient to survive a motion to strike.
Finally, the fourteenth count of the revised complaint alleges that the Starr defendants were on notice, at all times relevant to the complaint, that the premises "contained dangerous, hazardous and toxic levels of lead paint that posed a lead poisoning threat . . . to minor children" (¶ 14), that they failed to take the necessary steps to abate the lead paint hazard after receipt of notice (¶ 15) but rather undertook an improper abatement while the minor children were still residing in the premises (¶ 16). These allegations are also sufficient to support the plaintiffs' claim of breach of implied warranty.
Accordingly, for the reasons stated above, the defendants' motions to strike counts 5, 13 and 14 are denied.
Counts 6, 15, and 16 (Covenant of Quiet Enjoyment)
The Nigro defendants move to strike count 6 and the Starr defendants move to strike counts 15 and 16 on the ground that the plaintiffs have failed to allege sufficient facts to state a claim of the breach of the covenant of quiet enjoyment because there are no allegations of either actual or constructive eviction. The plaintiffs respond that it is sufficient to allege CT Page 1732 that the premises were rendered untenantable because of the presence of dangerous, hazardous and toxic levels of lead paint.
"The covenant of quiet enjoyment is intended to secure undisturbed possession for the purchaser." Thompson, Real Property, § 3192. The "covenant of quiet enjoyment insulates the tenant against acts or omissions on the part of the landlord . . . which interfere with the tenant's right to the use and enjoyment of the premises for the contemplated purposes. . . ." 49 Am.Jur.2d, Landlord and Tenant, § 601 (1995). The covenant is implied in every lease unless negated by an express lease provision. Id. § 602. 2 R. Powell P. Rohan, Powell on Real Property, § 16B.03[1], p. 16B-34 (1996).
The claim of breach of covenant of quiet enjoyment generally arises in actions to recover rent or for breach of lease agreements brought by landlords where it is raised defensively by the tenant as a reason for nonpayment. Conference Center Ltd. v.TRC, 189 Conn. 212, 455 A.2d 857 (1983)(landlord's action for breach of lease); Thomas v. Roper, 162 Conn. 343, 294 A.2d 321
(1972) (action to recover rent); Amsterdam Realty Co. v. Johnson,115 Conn. 243, 248, 161 A. 339 (1932) (action for nonpayment of rent); Baretta v. T T Structural, Inc., 42 Conn. App. 522,681 A.2d 359 (1996) (action to recover rent); Net Realty Holding Trustv. Nelson, 33 Conn. Sup. 22, 358 A.2d 365 (1976) (action for nonpayment of rent). In these cases, the courts have required actual or constructive eviction of the tenant as a prerequisite to the tenant asserting a breach of the covenant of quiet enjoyment. Further, when constructive eviction has been claimed defensively, "[i]n addition to proving that the premises are untenantable, a party . . . must prove that (1) the problem was caused by the landlord, (2) the tenant vacated the premises because of the problem, and (3) the tenant did not vacate until after giving the landlord reasonable time to correct the problem." Baretta v. T T Structural, Inc., supra,42 Conn. App. at 526. The premise behind requiring the tenant's abandonment of the leasehold is a simple one — it would be unfair to allow a tenant to remain in possession but avoid the payment of rent simply by pleading breach of the covenant of quiet enjoyment.
In this case, however, the plaintiffs do not seek to avoid payment of rent but rather rely on breach of the covenant of quiet enjoyment affirmatively as a basis to recover damages.[3]
Under those circumstances, a number of jurisdictions have concluded that the tenant's abandonment of the premises is not CT Page 1733 necessary to claim constructive eviction. See Benitez v. Restifo,167 Misc.2d 967, 641 N.Y.S.2d 523 (City Ct. 1996); EchoConsulting Services Inc. v. North Conway Bank, 140 N.H. 566,571-72, 669 A.2d 227 (1995); O C Corp. v. Maryland PortAdministration, 68 Md. App. 181, 510 A.2d 1101, 1110-11 (1986);Kirkland v. Allen, 678 P.2d 568, 571 (Colo.App. 1984); Nate v.Galloway, 408 N.E.2d 1317 (Ind.App. 1980); Guntert v. City ofStockton, 55 Cal.App.3d 131, 140-41, 126 Cal.Rptr. 690, 694-95
(1976). As the Vermont Supreme Court stated in NorthernTerminals, Inc. v. Smith Grocery Variety, Inc., 138 Vt. 389,396-97, 418 A.2d 22, 27 (1980), regarding the defendant's counterclaim for wrongful interference with business, the "defendant here seeks damages for the landlord's breach of covenant, not `escape' from its rent obligation under a constructive eviction theory. And where it is damages that are sought it is not necessary for the tenant to abandon." The court agrees with this statement and concludes that, under the circumstances presented here, a breach of the covenant of quiet enjoyment can be alleged without the requirement that the tenant vacate the premises. However, the other elements to support constructive eviction must be present.
Under our law, constructive eviction is defined to include conduct on the part of the landlord which renders the premises untenantable. Connecticut National Bank v. Douglas,221 Conn. 530, 538-39, 606 A.2d 684 (1992). The "classic statement" of the Connecticut law of constructive eviction is found in AmsterdamRealty Co. v. Johnson, supra, 115 Conn. at 248 that "constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable. . . ." The determination of whether premises have become untenantable is a question of fact. Thomas v. Roper,
supra, 162 Conn. at 347. "No general rule can be laid down applicable to all circumstances by which it may be determined when a tenement becomes unfit for occupancy and untenantable. The inquiry in every instance depends upon the facts of the particular case. By this is meant the situation of the parties to a lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed. Hatch v. Stamper, 42 Conn. 28, 30; Tungsten Co. v.Beach, 92 Conn. 519, 524, 103 A. 632; 2 Tiffany, Landlord Tenant, p. 1262; 2 Underhill, Landlord Tenant, p. 1138; 2 McAdam, Landlord Tenant (4th Ed.) p. 1399." Reid v.Mills,
CT Page 1734118 Conn. 119, 122-23, 171 A. 29 (1934), quoted with approval inConference Center Ltd. v. TRC, supra, 189 Conn. at 221. Moreover, before a landlord may be held liable for constructive eviction, the tenant must give the landlord notice of the problem and a reasonable time to correct it. Baretta v. T T Structural, Inc., supra, 42 Conn. App. at 526.
The allegations of the sixth and sixteenth counts of the revised complaint are sufficient to state a cause of action for breach of the covenant of quiet enjoyment. In the sixth count of the revised complaint, the plaintiffs allege that the Nigro defendants breached the lease agreement's covenant of quiet enjoyment by "delivering and providing a residence with dangerous, hazardous and toxic levels of lead paint on its interior and exterior surfaces" (¶ 16) and by acting in a willful, wanton and reckless manner despite notice that the premises posed "a lead poisoning threat . . . to minor children" (¶¶ 19-23). The sixteenth count of the revised complaint alleges the willful, wanton and reckless breach of the covenant when, after notice of a lead paint hazard on the premises (¶¶ 14, 15) and with knowledge of the hazards of lead paint and lead dust, an inadequate and improper lead abatement was undertaken without removing or relocating the minor children causing their exposure to lead paint dust (¶¶ 16, 17). Accordingly, the defendants' motions to strike counts 6 and 16 are denied.
However, the fifteenth count of the revised complaint is insufficient to state a cause of action for breach of the covenant of quiet enjoyment. It alleges a breach of the covenant of quiet enjoyment based solely on the Starr defendants "delivering and providing a residence with dangerous, hazardous and toxic levels of lead paint on its interior and exterior surfaces" (¶ 16). Unlike counts 6 and 16, there are no allegations that defendants were on notice that the premises contained lead paint hazards or that they did or suffered any act which made the premises untenantable and injured the plaintiffs. Accordingly, the Starr defendants' motion to strike count 15 is granted.
Counts 8 and 18 (CUTPA)
The defendants move to strike counts 8 and 18, which allege a violation of Conn. Gen. Stat. § 42-110a et seq. ("CUTPA"). The defendants contend that the allegations are conclusory and they do not meet the two threshold requirements for recovering CT Page 1735 damages under CUTPA: that the conduct at issue constitutes an unfair or deceptive trade practice and as a result the plaintiffs sustained an ascertainable loss of money or property. At oral argument, the defendants also claimed that the single act of leasing premises to the plaintiffs is an insufficient basis for a CUTPA claim. The plaintiffs counter that the defendants' alleged violation of the statutes and regulations regarding lead-based paint offends public policy and thus constitutes an unfair and deceptive practice under CUTPA. They also argue that an ascertainable loss of money or property sufficient under CUTPA occurs when a consumer receives something other than what was bargained for such as exposure to allegedly hazardous and toxic levels of lead-based paint. Finally, they contend that if a landlord is in the business of renting out property then CUTPA applies even to a single lease agreement.
The eighth count of the revised complaint against the Nigro defendants incorporates paragraphs 1 — 13 of the first count which allege, among other things, that the plaintiffs leased and inhabited the South Water residence from November 1991 through January 1993, were exposed to dangerous, hazardous and toxic levels of lead paint and suffered injuries and losses as a result. Likewise, the eighteenth count of the revised complaint against the Starr defendants incorporates paragraphs 1 — 13 of the ninth count which allege, among other things, that the plaintiffs leased and inhabited the Windsor residence from April 1993 through June 1994, were exposed to dangerous, hazardous and toxic levels of lead paint and suffered injuries and losses as a result. In paragraph 14 of the eighth and eighteenth counts, the revised complaint alleges that the unfair and deceptive acts violative of CUTPA are the defendants' "course of conduct" as set forth in the first through seventh counts as to the Nigro defendants and the ninth through seventeenth counts as to the Starr defendants. Both counts further allege that as a result of this conduct the plaintiffs have sustained injuries and losses (¶ 15) and have incurred and will incur attorneys' fees (¶ 16).
Neither count eight nor count eighteen specifically alleges that the defendants violated any statutes or regulations regarding lead-based paint in residential premises; however, such allegations are contained in counts three and eleven (the negligence per se counts). The defendants argue that this lack of specificity is fatal to the CUTPA counts, citing S.M.S. TextileMills, Inc. v. Brown, Jacobson, Tillinghast, Lahan King, P.C.,32 Conn. App. 786, 797, 631 A.2d 340 (1993), for the proposition CT Page 1736 that CUTPA claims must be pleaded with particularity so that their legal sufficiency may be tested. This argument has some significance because if the CUTPA claim is grounded solely on the defendants' negligence[4] its legal sufficiency would be tested far differently than if it is grounded as well in the alleged violation of statutes. Compare Pollio v. Santillo, Superior Court, judicial district of New Haven, Docket No. 359030 (Apr. 10, 1995, Hodgson, J.) with Gutierrez v. Jefferson Street MedicalBuilding, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529230 (Sept. 27, 1994, Hennessey, J.). The court concludes, however, that the CUTPA claim in this case is not grounded solely on negligence, but also on alleged violations of statute as set forth in counts 3 and 11 and allegations of willful, wanton and reckless conduct as set forth in counts 7 and 17.
Our courts apply the "cigarette rule" to determine whether an alleged act is unfair. Fink v. Golenbock, 238 Conn. 183, 215,680 A.2d 1243 (1996); Saturn Construction Co. v. Premier Roofing Co.,238 Conn. 293, 310, 680 A.2d 1274 (1996); Larsen Chelsey RealtyCo. v. Larsen, 232 Conn. 480, 507, 656 A.2d 1009 (1995). That rule contains three criteria: "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least some penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen." (Citations omitted). Cheshire Mortgage Service,Inc. v. Montes, 223 Conn. 80, 105-06, 612 A.2d 1130 (1992). "`All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy.'" (Citations omitted.) Jacobs v. Healey Ford-Subaru, Inc.,231 Conn. 707, 725-26, 652 A.2d 496 (1995).
The plaintiffs contend that it is not necessary to allege facts which establish all three criteria of the cigarette rule. The plaintiffs rely on Conaway v. Prestia, 191 Conn. 484, 491,464 A.2d 847 (1983), which held that CUTPA creates a private cause of action to recover damages for violations of certain CT Page 1737 landlord-tenant statutes, specifically Conn. Gen. Stat. §§47a-57 and 47a-5. See Kelley Property Development Inc. v.Lebanon, 226 Conn. 314, 333, 627 A.2d 909 (1993). The plaintiffs argue that since the course of conduct referred to in paragraph 14 as set forth in the other counts includes, among other things, that the defendants' actions were in violation of the lead-based paint statutes, these allegations suffice to satisfy the first criterion of the cigarette rule. The plaintiffs point in particular to their reliance on violations of Conn. Gen. Stat. §§ 47a-7 and 47a-8. See Hardy v. Griffin, 41 Conn. Sup. 283,287, 569 A.2d 49 (1989) (a lead paint case although not in the context of a motion to strike): "The violations of §§ 47a-7
and 47a-8 bring this case within the ambit of Conaway v.Prestia."
Allegations that defendants leased premises which contained lead paint in excess of statutory limitations have been found to suffice to state a practice which offends public policy as set forth in the first cigarette rule criterion. See Becher v.Seifel, Superior Court, judicial district of Litchfield, Docket No. 068680 (Nov. 27, 1995, Pickett, J.); Kohutka v. Mazzucco,
Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 142751 (Apr. 18, 1995, Lewis, J.);Gutierrez v. Jefferson Street Medical Building, supra; Hardy v.Griffin, supra, 41 Conn. Sup. at 287. While the allegations of the CUTPA counts are far from ideal, construing them in a manner most favorable to the plaintiffs, the court concludes that there is sufficient reference to the statutory violations alleged in counts three and eleven to put defendants on notice of the plaintiffs' legal theory underlying the CUTPA claim and to survive a motion to strike.
Moreover, the allegations of counts eight and eighteen are also sufficient to satisfy the third criterion of the cigarette rule, that of substantial injury to the consumer. On many occasions, our Supreme Court has cited the following quotation: "Moreover, in 1980 the commission reviewed those factors and concluded that [u]njustified consumer injury is the primary focus of the FTC Act, and the most important of the three . . . criteria." D. Rice, Consumer Unfairness at the FTC: Misadventures in Law and Economics, 52 Geo. Wash. L. Rev. 1, 4 (1983), quoting letter from FTC commissioners, December 17, 1980. See WilliamsFord, Inc. v. Hartford Courant Co., 232 Conn. 559, 592,657 A.2d 212 (1995); A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 215-16, 579 A.2d 69 (1990); Atlantic Richfield Co. v. CanaanCT Page 1738Oil Co., 202 Conn. 234, 242-43, 520 A.2d 1008 (1987). The FTC has established three tests which must be met to justify a finding of unfairness: the injury (1) must be substantial, (2) is not outweighed by any countervailing benefits to consumers and (3) could not be reasonably avoided by the consumer. Williams Ford,
supra, 232 Conn. at 592; A-G Foods, supra, 216 Conn. at 216. InTackling v. Shinerman, Superior Court, judicial district of New London, Docket No. 521012 (Feb. 9, 1993, Teller, J., 8 CSCR 257), allegations of injuries similar to those the plaintiffs allege they have sustained (blood disorders, learning disabilities and emotional disturbances, attention disorders, renal disorders, and neurological disorders) were held sufficient to meet all three tests of unjustified substantial injury.
The defendants also claim that the revised complaint fails to state sufficient facts to satisfy the "ascertainable loss of money or property" requirement of a CUTPA action. The court disagrees. To meet this requirement, plaintiffs do not need to allege a specific amount of ascertainable loss but rather need only allege that they purchased an item partially as a result of an unfair practice or act and that the item is different from that for which they bargained. Hinchliffe v. American MotorsCorporation, 184 Conn. 607, 614-615, 440 A.2d 810 (1981). Here, the plaintiffs claim that because of the defendants' unfair acts, as discussed above, they rented and inhabited apartments which contained toxic levels of lead and caused them to become lead poisoned — a result they certainly didn't bargain for. This was held sufficient in Guitterez, supra. Moreover, the revised complaint contains certain specific allegations that have been held to meet the threshold requirement regarding ascertainable loss: that the premises were leased pursuant to a lease agreement (counts 1 and 9, ¶ 13) under which it may be inferred that the defendants received rent, Conway v. Prestia, supra,191 Conn. at 494, and that the plaintiffs have incurred bills and expenses for medical care and treatment and increased costs associated with obtaining a suitable education (counts 1 and 9, ¶ 15(j)(k)).Mulqueen v. Nutri System Weight Loss, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 113014 (May 29, 1992, Rush, J., 6 Conn. L. Rptr. 459 ); Hov v. Westland Inc.,
Superior Court, judicial district of Fairfield at Bridgeport (Sept. 28, 1989, Thompson, J. 4 CSCR 729).
Finally, the defendants argue that the single act of leasing premises to the plaintiffs is an insufficient basis for a CUTPA claim. Although the defendants do not dispute that CUTPA applies CT Page 1739 to rental transactions, they claim that its application should be limited to what is, essentially, a sophisticated landlord engaged in multiple rental transactions, see Conaway v. Prestia, supra,191 Conn. at 487, and should not be extended to what counsel described as "mom and pop renting out the second floor" on a single occasion. Based on the allegations of the revised complaint, the court cannot reach any conclusions regarding the relative sophistication of the defendants. However, the court agrees with the weight of authority which holds that CUTPA encompasses a single lease transaction, as well as other single acts of alleged misconduct. See Becher v. Seifel, supra (single lease of apartment alleged to contain lead-based paint); Studentv. Cardascio, Superior Court, judicial district of New Haven, Docket No. 251791 (March 3, 1987, Reynolds, J., 2 CSCR 382) (single lease of defendant's third floor apartment); Thompson v.Colasanto, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 102280 (Dec. 8, 1986, Goldstein, J., 2 CSCR 229) (tenant suit against landlady). See also Levesquev. Kris Enterprises, Superior Court, judicial district of Litchfield, Docket No. 053776 (May 20, 1991, Susco, J.,4 Conn. L. Rptr. 86) (real estate sales agreement); Allison v. Widder,
Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 100910 (April 6, 1990, Cioffi, J.,1 Conn. L. Rptr. 100) (one time sale of real estate); Jamison v.Artinian, Superior Court, judicial district of New London, Docket No. 507709 (March 28, 1989, Hendel, J., 4 CSCR 387) (single house purchase); Sadek v. Vitka, Superior Court, judicial district of New Haven, Docket No. 252140 (July 28, 1987, Reynolds, J.,2 CSCR 876) (single performance of home inspection); Judge v.Housemaster of America, Superior Court, judicial district of Waterbury, Docket No. 077616 (Mar. 9, 1987, Gill, J., 2 CSCR 421) (single purchase of home inspection insurance policy).
Accordingly, for all the reasons stated above, the defendants' motions to strike counts 8 and 18 are denied.
Conclusion
The defendants' motions to strike counts 1, 5, 6, 8, 9, 13, 14, 16 and 18 are denied. The defendants' motions to strike counts 3, 4, 11, 12 and 15 are granted.
LINDA K. LAGER, JUDGE